# J. FRANK SNYDER *v.* GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS ET AL.

[No. 30, January Term, 1929.]

*Decided May 15th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Joseph D. Mish* and *George Cochran Doub,* for the appellant.

*Arthur L. Jackson,* with whom was *Oscar J. Horn* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellant seeks a mandatory injunction to compel the Pension Association of the Brotherhood of Locomotive Engineers to pay him a pension during the remainder of his life, under provisions of the statutes of the organization, and the appellees deny that he is entitled to a pension under those provisions, and also deny liability to suit in the State of Maryland, and liability to suit in any court, because remedies are provided by the brotherhood and association statutes. A motion to quash the subpoenas was filed by the defendants. The trial court concluded that it had jurisdiction of the defendants, and therefore overruled the motion, but concluded further that the appellant was not entitled to a pension, and on that ground sustained a demurrer to the bill of complaint and dismissed it. On this appeal all the disputed questions of jurisdiction and right to a pension have been argued, but there is, of course, no appeal entered from the motion to quash the subpoenas, on which the appellant was successful, and the propriety of that ruling cannot be considered by this court, unless it should be found that the appellant was entitled to a pension and the question of ordering further proceedings on his bill of complaint should then arise. This court has agreed with the trial court that there was no right to maintain the bill, if jurisdiction be assumed, and that the demurrer was properly sustained.

The Brotherhood of Locomotive Engineers, an unincorporated association, has several protective or beneficial systems and funds for its members, and among them the pension system under what is called a "Pension Association of the Brotherhood of Locomotive Engineers." Whether that association should be classed as a separate organization is a matter of definition on which there might, perhaps, be some dif-

ference of view, and it seems to be of no importance here. In the preamble to the constitution of the brotherhood, the association is described as a department. Actually it is a voluntary grouping of members of the brotherhood to adminster and share the privileges of a separate fund for pensions made up of contributions by those members. The members of an advisory board of the brotherhood constitute a board of governors for the pension association, and they are honorary members of the association, or active members if they choose to become such. And that board elects officers for the association; but, according to the statutes of the association, it is its policy to have the same chief officers as those of the brotherhood. The association is self-sustaining, and the pension funds are kept separate from funds of the brotherhood generally. The benefits are to be paid to pensioners who are not in active service and have no remunerative labor, and the amounts payable are varied according to the ages at which members join the association. These amounts may, however, be increased or decreased by the board as conditions may necessitate or warrant.

Membership in the pension association is confined exclusively to members of the brotherhood, and as to each member it is to continue only during his good standing in the brotherhood—with one exception. There is attached, to the section of the statutes which thus expressly restricts membership in the association, this proviso, upon which the appellant largely rests his case. (Article IV, section 5.) "Should a member be expelled from the B. of L. E. he may retain his membership in the association for one year, provided, however, he pays all pension dues accruing during said term of expulsion. If not reinstated in the B. of L. E. within a period of one year, he shall be declared no longer a member of this Association. Any member of the Association having lost membership in the B. of L. E. and Pension Association may, if reinstated in the B. of L. E. * * * again become a member of the Association and entitled to the same benefits therefrom as said member was entitled to at the time of his expulsion from

the B. of L. E.   If said member is not reinstated in the B. of L. E. he forfeits all rights and interest that he may have then or may have had in this Association."

The appellant, an engineer on the Western Maryland Railroad, and a member of the brotherhood and of the pension association, refused in 1925 to obey a strike order, and was expelled from the brotherhood.   Upon an appeal there was a reinstatement for a time, but upon the hearing of charges he was finally expelled on April 6th, 1928.   He concedes the correctness of the expulsion under the constitution and statutes of the brotherhood.   He chose to retain membership in the pension association for a period of one year more, under the section just quoted, and a week after, when he reached the age of 65 years, retired and applied for a pension under a further section (article V, section 11) which provides that, "All members of the Association who are 65 years of age and are in active service, as defined by the statutes of the B. of L. E. * * * may, if they so elect, voluntarily retire permanently from such service, and thereupon become eligible for a pension at once."

And the question raised by this claim is whether the extension of membership in the association for one year after expulsion from the brotherhood, under the statute first quoted, carries with it a right in the member, by retiring at 65 years of age during the year, to secure a permanent pension, beyond the years of membership, under the statute last quoted. Or is the pension provided only for members while they continue with the status of members under the statutes? The trial court construed the statutes to provide pensions only for members during membership, and not beyond the year's extension, unless meanwhile, by reinstatement in the brotherhood, membership should be extended beyond the year.

The appellant contends that the rights he acquired by joining the association and paying his dues were analogous to rights under a policy of insurance, in so far, at least, that upon the happening of the contingency during membership, he became entitled to a vested, fixed right to sums of money

previously specified, and that these rights could not be defeated by subsequent loss of membership. But what were the rights acquired cannot be decided by analogy or by abstract principles, but only by the constitution and statutes of this organization. It seems quite clear that it cannot be true that the member acquired any more than was offered to those becoming members and making contributions. If he joined an association designed to provide retirement pensions payable only while membership continued, that is all he can claim from it. The court cannot give him something more.

The intention of the statutes on this question is not so clear as it might be made perhaps, but it appears to this court, too, from a review of the various provisions, that the intention is that the pension payments provided for are to carry inactive members, and are not payable to any whose membership is finally severed. *Burke v. Monumental Division*, 286 Fed. 949, 298 Fed. 1019, and 270 U. S. 629. The preamble to the statutes of the association states the purpose to be "to provide a monthly income for its members who, on account of advanced age or any physical or mental infirmities, become totally and permanently disabled." And the article concerning the payment (article V, section 1) provides that, "Any member of this Association, in good standing, who was in active service * * * at the time of enrollment as a member, but who * * * has been retired on account of old age, shall receive from the funds of this Association a monthly pension as hereinafter provided." The provision first quoted above, for extension of membership for a year pending possible reinstatement in the brotherhood, says that upon reinstatement the member shall "again become a member of the Association and entitled to the same benefits therefrom"; and that seems to indicate a plan that benefits shall cease with membership. Throughout the statutes the pensioners are contrasted with "active members", and, as has been stated, it is provided (article V, sections 9 and 10), that pensioners may be transferred to active membership upon resuming active service or engaging in other remunerative labor. And, as has also been stated, the amounts payable may be increased

or decreased by the board of governors as conditions may necessitate or warrant (article XI) ; and that fact seems to indicate a relationship quite different from the ordinary one of policy holder and insurer, and rather that of inactive member and association as argued.

Evidently the section providing for the year's continuation of membership after expulsion from the brotherhood (article IV, section 5), intends that termination of membership in the association shall be deferred during a period in which there might be an application for reinstatement, and that after it is finally determined that the qualifying membership in the brotherhood is not to be resumed, there shall be no pension payments, for the section concludes by saying that if there is no reinstatement in the brotherhood, the member "forfeits all rights and interest that he may have then or may have had in this Association"—a provision which seems to terminate directly any right to pension payments which might otherwise be claimed. The following section, too (article IV, section 6), provides that upon a voluntary final withdrawal from membership in the brotherhood, an action after which there would be no uncertainty pending an application for reinstatement, membership in the association is forfeited at once, "together with all rights and interests that he may then have, or may have had, in this Association." And the same immediate forfeiture of rights and interests is provided by section 8 for members expelled because of false and fraudulent statements made to secure membership or obtain a pension.

The scheme outlined by these provisions seems to be clearly enough one for carrying inactive members, and for carrying them only while they continue to be members. The express provision for forfeiture of all rights and interest seems to permit that construction only, and the other provisions quoted conform to it. As to payments which might have been made as an incident to the extra year of membership, before suit brought, it is not clear to us that these are denied by the statutes. The cancellation or forfeiture of rights which the member then had, or may have had, is not clearly retroactive

in its effect. But, as the trial court observed, the remedy at law for amounts due was adequate and there was no ground for resorting to a court of equity for their recovery.

For aid in the decision of this question we have compared the organization's statutes relating to other protective or beneficial funds maintained, in which there are points of similarity. In addition to the pension association there is an insurance association and systems of indemnity insurance and sick benefit insurance. The insurance association issues to members certificates for stipulated sums varying from $1,500 to $6,000 according to ages of members at the time of beginning membership, and payable upon disability or death. And it is provided that "should a member be expelled from the Brotherhood of Locomotive Engineers he may retain his membership in this (insurance) association for one year," or until after disposition of any appeal he may file. And here, too, "any member who takes a final withdrawal card forfeits his insurance at once." With respect to the indemnity insurance, which secures weekly payments in case of accidental injury or death, and the sick benefit insurance, which secures weekly payments in case of loss of time or death by sickness, it is provided that the insurance of a member expelled from the brotherhood shall be cancelled at the expiration of the current quarterly period unless he has been reinstated before that time. It may be argued very plausibly that the lump sum insurance would under these provisions become payable in full upon the happening of the insured contingency within the current quarter, but it seems unquestionable that it is not to be paid upon a contingency happening after the quarter, and that weekly payments of indemnity or sick benefits are not to be continued after the quarter. These provisions seem to us to confirm the view that the pension benefits too are intended to carry inactive members only while membership is continued.

It has been argued by the appellees, as stated, that the appellant is not entitled to seek a remedy in the civil courts, because the statutes of the organization provide for appeals to the governors of the pension association and the brother-

hood. *Long v. Balto. & O. R. Co.,* 155 Md. 265, 279. There is, in the statutes, the provision that a member forfeits all rights and interest if he resorts to the courts without first exhausting the rights of appeal given him within the organizations. The bill of complaint alleges that he has exhausted his right within the pension association, and the right of appeal for reinstatement within the brotherhood seems not to be involved in the present controversy, for the appellant does not contest the expulsion by the brotherhood, or its failure to reinstate him. Accepting the action in these respects as final, he contends that he is still entitled to a pension under the statutes of the pension association, a contention which would not go before the brotherhood. And we think that in this instance the finality which attaches to decisions on appeals within such an organization as the pension association does not affect the question litigated, for it is not a question which the statutes refer to the decision of the association. Accepting as final the decisions on all questions of fact, and the exercise of any discretion called upon, conceding the settlement of everything to be settled by the board of governors, the complainant appeals to the courts on a question which both sides agree is, from that point on, settled by the statutes. The governors have been given no power to alter the statutes or to interfere with payment to the complainant of whatever the statutes may give him upon established facts and circumstances, if anything. What the statutes provide in that case constitute his contract, to which he is entitled at all events. And that is all he claims now. Compare *Yoe v. Howard Mut. Benevolent Assn.,* 63 Md. 86; *Expressmen's Assn. v. Hurlock,* 91 Md. 585. We conclude that there is no obstacle to his prosecuting in the civil courts the limited contentions he now makes. For reasons previously stated, however, we find no right of recovery.

*Decree affirmed, with costs to the appellees.*

PARKE, J., filed the following separate opinion:

The writer is in accord with the ably stated conclusion of the court that a proper construction of the constitution, statutes, and regulations of the Pension Association of the Brotherhood of Locomotive Engineers does not, under the given circumstances, entitle the plaintiff to a pension for life. Nor would the view to be expressed in this concurring opinion cause any practical difference in the result of the appeal at bar; but the denial of relief would rest upon a ground which the court considered, but rejected, in its opinion. This ground is the Maryland doctrine which was thus set forth so recently as in *Long v. Balto. & O. R. Co.*, 155 Md. 265, 279:

"The rule which controls this court was stated in *Donnelly v. Supreme Council*, 106 Md. 425, 430, in these words: 'The proposition that the member is not precluded from suing at law, after he has exhausted his remedies within the order, unless the contract specifically provides that the decisions of the tribunals of the order shall be final, is supported by the decisions of some states, among which are the states of Illinois and Indiana. But the Maryland rule is otherwise. That rule was expressed with clearness and precision by the learned judge who decided the case below to be, that when the tribunals of the order have power to decide a disputed question their jurisdiction is exclusive, whether there is a by-law stating such decision to be final or not, and that the courts cannot be invoked to review their decisions of questions coming properly before them, except in cases of fraud. This is true, whether the member does not press his claim at all before the tribunals of the order, or whether he carries it through the final tribunal, or whether he goes through only a part of the hearings which he might have in the order. According to the law of this state, it is the existence of a tribunal, properly erected and charged with the duty of determining the rights of the members as between themselves and the order, which is a bar to a suit in court of a member against such order in regard to any question so confided to the tribunals of the members' own choice.' " The numerous decisions of this court which support this rule are cited at

the close of the quotation from *Long v. Balto. & O. R. Co.*, *supra*.

In the cause at bar, no illegality of any of the rules governing the association is charged; neither is any denial made that its board of governors is the tribunal to investigate and finally determine the right of an applicant to a pension; nor is there any intimation that the action of the board of governors in denying the plaintiff's application for a pension was either illegal or fraudulent. The claim of the plaintiff was, therefore, heard before a tribunal having jurisdiction of the subject matter, which was there duly and finally adjudged against the plaintiff according to the procedure which had been prescribed by the laws of the association. So, the instant cause would seem to be a typical one within the Maryland doctrine that the court has no authority to intervene in a controversy once so formally and finally settled by a tribunal created for the purpose of deciding the rights of the members under the rules of the order. The chancellor, however, entertained jurisdiction; and is now affirmed in this court because a review of the facts and circumstances, when considered in connection with the rules of the association, has convinced the court that the rights of the member had been correctly decided by the board of governors on his application for a pension. It is a corollary to this conclusion that, if this court had not so agreed with the construction and determination of the board, it would have decreed that the association must pay the pension to the plaintiff.

The theory of the opinion is that, because there is no issue of fact but simply the question whether or not, under the uncontroverted facts and circumstances of the particular cause, the plaintiff is entitled under the rules of the association to a pension for life, a court of equity has jurisdiction to determine what is the correct construction of these rules as applied to such facts and circumstances; and, therefore, to affirm or reverse the decision of the supreme tribunal of the association under these conditions. As pointed out in the prevailing opinion, the board of governors has no power of legislation;

332

nor has it the right to function arbitrarily. And it is quite true that the member is entitled to the benefit of his contract, which, however, is made with reference to, and includes as terms thereof, the provisions of the constitution and by-laws of the association, providing that the board of governors shall investigate all claims for pensions, which it shall approve or reject, and order paid; and that no one shall be enrolled as a pensioner or receive a pension until his application is made and duly approved. It is submitted, however, that it is neither legislation, nor an abuse, nor an arbitrary exercise, of power, nor an alteration of a term of a contract, but merely a customary exercise of delegated power, for the board of governors to determine, under admitted and undisputed facts and circumstances as well as when they are in issue, whether or not the statutes of the association entitle the member to a pension. A decision so made is final. *Supra.*

For these reasons the writer of this separate opinion believes the bill should have been dismissed by the chancellor.