COUNTY BOARD OF EDUCATION FOR WASHING-
TON COUNTY *v.* GRACE A. CEARFOSS.

SAME *v.* VALERIA JONES.

SAME *v.* JULIA A. HINO.

[Nos. 29-31, April Term, 1933.]

180

*Decided June 21st, 1933.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Joseph D. Mish* and *Robert H. McCauley,* for the appellant.

*John E. Wagaman* and *E. Stuart Bushong,* for the appellees.

URNER, J., delivered the opinion of the Court.

In the three cases, argued together, which are now to be determined, a highly important question is presented. It concerns the contractual rights of the appellees as teachers, and the authority of the administrative boards and officials as affecting such rights, under the laws of Maryland relating to public education.

The question is raised in each of the cases by demurrer to the declaration, which, in the first case, alleges, in effect, that the plaintiff was the holder, since July 1st, 1921, of an elementary school teacher's certificate of the second grade, issued by the State Superintendent of Schools, and that on

the date mentioned she entered into the employ of the defendant County Board of Education of Washington County for an undetermined number of years, at a salary of $1,050 per annum, under a contract which stipulated that the plaintiff was to be employed to teach in the public schools of the county, "subject to assignment by the County Superintendent or transfer to some other teaching position within the county, provided that if the transfer be made during the school year or after the opening of school for any year, the salary shall not be reduced for the remainder of the year," the salary to be fixed by the county board of education and to be not less than the minimum salary specified by law. The alleged contract contained further provisions as follows:

"And it is further agreed that the said teacher will not vacate the position to which assigned during any school year, except in case of emergency, of which the County Board of Education shall judge.

"And it is further agreed that either of the parties to this contract may terminate it at the end of the first or second school year by giving thirty days' notice in writing to the other during the month of June or July.

"And it is further agreed that if the teacher named herein wishes to vacate his or her position after the second year, thirty days' notice in writing shall be given the County Board of Education during the month of June or July, except in case of emergency, of which the County Board of Education shall judge.

"If any of the conditions of this contract shall be violated by the teacher named herein, salary already accrued will be forfeited in the discretion of the County Board of Education.

"This contract shall continue from year to year, subject to the foregoing conditions, provided that if the teacher, on recommendation of the County Superintendent, is suspended by the County Board of Education in accordance with the provisions of section 86 of article 77 of the Annotated Code of Maryland, said teacher shall have the right to appeal to the State

Superintendent of Schools, if the decision of said
Board is not unanimous.

"This contract is made in accordance with the pro-
visions of the school law, and is subject to sections
83 and 86 of article 77 of the Annotated Code of Mary-
land, chapter 506, of the Acts of the General Assembly
of 1916, and any amendments thereto, and will be filed
among the records of the County Board of Educa-
tion."

After reciting the contract which we have quoted, the
declaration proceeds:

"And on the said day the plaintiff entered the em-
ploy of the said defendant in the capacity of school
teacher and continued in such employ of the said de-
fendant in the capacity aforesaid, and on the terms
aforesaid, until on or about the 30th day of June, A.
D. 1930. And although the said plaintiff was on the
day and year last mentioned, and has always been
ready and willing and then and there offered to remain
and continue in the employ of the said defendant in
the capacity aforesaid, and on the terms aforesaid, for
the remainder of said term, to-wit, until the term of
her employment was terminated, and the said defend-
ant during the term aforesaid, to-wit, on or about the
30th day of June, A. D. 1930, disregarding the terms
and conditions of the contract aforesaid refused to
suffer the said plaintiff to continue in its, the said de-
fendant's, said employ although the plaintiff did not
have any notice of any written recommendation of the
County Superintendent of Washington County, recom-
mending her suspension or dismissal for immorality,
misconduct in office, insubordination, incompetency,
or willful neglect of duty, and that she, the plaintiff,
was not given any opportunity to be heard by the said
Board of Education upon any charge made against
her for immorality, misconduct in office, insubordina-
tion, incompetency, or willful neglect of duty. And the
plaintiff was not given any opportunity to be heard
in her defense to a recommendation of the defendant

to the State Superintendent of Schools recommending the revocation of the said certificate of the said plaintiff. Nor did the State Superintendent of Schools order any investigation upon any such recommendation by the said defendant, nor did the said State Superintendent of Schools approve any such recommendation for the revocation of the said plaintiff's certificate; nor was the said certificate of the plaintiff revoked by the said State Superintendent of Schools; the plaintiff became a member of the Maryland Teachers' Retirement System as of the date on which her teaching service began and did not vacate any position to which she was assigned during any school year. No notice of the termination of the said contract was given by either parties thereto to the other at the end of the first or of the second school year in which the plaintiff was employed by the defendant under the terms of the aforesaid contract, nor did the plaintiff give any notice after the second year that she wished to vacate her position as teacher under said contract; and the plaintiff performed all the conditions of said contract on her part; by reason whereof the said plaintiff has lost and been deprived of all the wages, profits and advantages which she otherwise might and would have derived and acquired from continuing in the employ of the said defendant as aforesaid; and which the said defendant has, from time to time, wholly neglected and refused the plaintiff, and the plaintiff has been and is, by reason of the premises, wholly unemployed."

The contract set forth in the declaration specifically refers to sections 83 and 86 of article 77 of the Code. The first of those sections relates to the issuance of certificates for teaching and for other service under the educational system. Section 86 provides as follows: "Any county board of education may, on the recommendation of the county superintendent, suspend any teacher, principal, supervisor or assistant superintendent for immorality, dishonesty, intemperance, insubordination, incompetency or willful neglect of duty,

and may recommend to the state superintendent of schools the revocation of the certificate of such person, stating in writing the grounds for such recommendations, and giving an opportunity, upon not less than ten days' notice, to be heard in defense, in person or by counsel, and the state superintendent of schools may order such investigations as he may deem necessary. If he approves the recommendation, the teacher's certificate shall be revoked and the teacher shall be dropped from the service."

By section 11 of article 77 of the Code, it is provided: "The State Board of Education shall, to the best of their ability, cause the provisions of this article to be carried into effect. They shall determine the educational policies of the State; they shall enact by-laws for the administration of the public school system, which when enacted and published shall have the force of law. For the purpose of enforcing the provisions of this article, and the enacted and published by-laws of the board, the State Board of Education shall, if necessary, institute legal proceedings. The State Board of Education shall explain the true intent and meaning of the law, and they shall decide, without expense to the parties concerned, all controversies and disputes that arise under it, and their decision shall be final; and the secretary of the State Board of Education shall have authority to administer oaths, in any part of the State, to witness in any matter pending before said board."

One of the by-laws adopted by the State Board of Education prescribes the form of contract which has been quoted, with an additional provision, not alleged in two of the declarations, that the contracting teacher should be a member of the Maryland Teachers' Retirement System. It appears from the record in all of the cases that the plaintiffs became members of the retirement system during the periods of teaching service to which the declarations respectively refer.

The averments in the three declarations are substantially similar, except for differences in description of the certificates held by the plaintiffs, the periods of their service, the

amounts of their salaries, and as to the provisions for membership in the retirement system, which one of the contracts included.

In support of the demurrers it is argued that the cause of action asserted in each of the declarations involves a question of school administration as to which the county school superintendent has a statutory power of decision, reviewable, on appeal, by the State Board of Education, and that the plaintiffs were restricted to the remedies thus provided, and were consequently precluded from resorting to the courts for redress. This contention relies upon section 136 of article 77 of the Code, which provides, in part: "The County Superintendent of Schools shall explain the true intent and meaning of the school laws, and of the by-laws of the State Board of Education. He shall decide, without expense to the parties concerned, all controversies and disputes involving the rules and regulations of the county board of education and the proper administration of the public school system in the county, and his decision shall be final, except that an appeal may be had to the State Board of Education if taken in writing within thirty days."

In the same connection reference is made to section 139, which makes the following provision: "The county superintendent of schools shall nominate, for appointment by the county board of education, all principals and all assistant teachers, shall assign them to their positions in the schools, transfer them as the needs of the schools require, recommend them for promotion, suspend them for cause and recommend them for dismissal."

It is not permissible to assume, for the purposes of the demurrers, that the plaintiffs were suspended for cause or recommended for dismissal, within the purview of section 139, which must be read in the light of section 86, indicating the various grounds of suspension or dismissal after notice and opportunity for defense. The primary issue of law to be decided on the demurrers is whether the plaintiffs have no recourse for relief from the denial of their alleged

contractual rights except to the county superintendent and by appeal to the State Board of Education from his action.

The "controversies and disputes" which the county superintendent is empowered by the statute to decide are those "involving the rules and regulations of the county board of education and the proper administration of the public school system in the county. * * *" This authorization is not sufficiently broad in its terms or evident purpose to require a person contracting with the county board of education to submit to the county superintendent, or to the State Board of Education on appeal, a question of right or liability arising under the contract. While the county superintendent is given authority to "explain the true intent and meaning of the school laws, and of the by-laws" adopted by the state board, the Legislature has not attempted to invest him with the power to adjudicate the meaning and effect of contracts into which the county board has entered. These suits proceed upon the theory that the dismissal of the plaintiffs from their service as teachers was a violation of their contractual rights. The denial of that claim, in the demurrers to the declarations, presents an issue of law appropriate for a judicial decision as to the proper interpretation of the contracts, and not an administrative dispute which the statute refers, in the first instance, to the county superintendent's determination. It does not involve an inquiry as to whether the plaintiffs satisfactorily performed the contracts, as did the case of *Devoine Co. v. International Co.*, 151 Md. 690, 136 A. 37, but it presents simply the question as to the duration of their employment, and as to the right of the other contracting party to discharge them at a particular period.

The State Board of Education is authorized by section 11 of article 77 of the Code to "explain the true intent and meaning of the law," and to "decide, without expense to the parties concerned, all controversies and disputes that arise under it," and their decision is declared to be final. But this section has been held not to confer upon the state board the power to determine purely legal questions. *Duer v. Dashiell,*

91 Md. 660, 47 A. 1040; *School Commrs. v. Henkel,* 117 Md. 97, 83 A. 89. In the cases just cited the questions for decision related to the effect of certain legislation upon rights acquired under pre-existing statutes. The issues presented in *School Commrs. v. Morris,* 123 Md. 398, 91 A. 718; *Zantzinger v. Manning,* 123 Md. 169, 90 A. 839; *Underwood v. School Board,* 103 Md. 181, 63 A. 221; *Shober v. Cochrane,* 53 Md. 544; and *Wiley v. School Commrs.,* 51 Md. 401, were held to be concerned with the proper administration of the public school system and were within the power of final decision vested in the state board by the Code. In none of those cases did the question for determination relate to the legal effect of a contract between an agency of the school system and an individual for the performance of a specified service. Such a question, in our judgment, is not within the initial authority of the county superintendent, or the ultimate power of the State Board of Education, to determine. This conclusion is supported in principle by the decision in *Snyder v. Grand Brotherhood,* 157 Md. 322, 146 A. 284.

The agreement quoted in each of the declarations evidently contemplated a normally continuing tenure for the teachers thereby engaged. It was stipulated that either of the parties to the contract could "terminate it at the end of the first or second school year by giving thirty days' notice in writing to the other during the month of June or July," and that, if the teacher wished to vacate her position after the second year, thirty days' notice in writing should be given to the County Board of Education, during June or July, except in case of emergency, of which the board should be the judge. Subject to those conditions, it was expressly provided that the contract should continue from year to year, unless the teacher were suspended or dismissed under the provisions of section 86 of article 77 of the Code, which permits such action after hearing on charges of immorality, dishonesty, intemperance, insubordination, incompetency or willful neglect of duty. In view of the Teachers' Retirement

System, with due regard to which the agreement was formulated by the State Board of Education, the contractual purpose to assure the teacher a continuity of service, in the absence of substantial reasons for its termination, becomes more significant. From the salaries of teachers becoming members of the retirement system there are annual contributions to a fund out of which they are to receive annuities after prolonged periods of teaching service. Consistently with this policy, the contracts with the teachers evidently designed that they might rely, after the first year, upon a tenure to continue until abrogated for sufficient cause. It would not be proper, however, to construe the contract as tending to assure to the teachers a permanency of employment. The officials in charge of the public school system would have no authority to assume for it the financial burdens which might result from such a contractual obligation. Changing conditions, such as the abandonment of certain courses of instruction, or the consolidation of schools, might reduce the number of positions for which teachers are required. In such event a teacher thus affected, whose tenure is of indefinite duration, could not rightfully demand payment for services not needed nor actually rendered. But it is the teacher's right, when complaining of a dismissal in breach of the contract of employment, to be presented with a valid reason for the discharge. Upon plea or proof sufficiently indicating the reason for such action, the court could determine, on demurrer to the plea, or on a prayer for a directed verdict, whether the defense is based upon grounds which, under the law, are within the exclusive cognizance of the public school authorities. In the event of a conclusion that the issue is one legitimately within the scope of that special jurisdiction, the plaintiff could be relegated to it for the method of redress which the statute provides.

Other grounds of the demurrers were that the declarations contained inconsistent allegations as to the salaries agreed to be paid to the plaintiffs, that the particular capacities in which they were employed to teach were not sufficiently de-

scribed, and that the places in which they were to perform their duties were not stated. In our opinion these objections were not sustainable.

After the demurrers were overruled, general issue pleas were filed in two of the cases, and in the other a judgment for the plaintiff was entered, the defendant having declined to plead. In each of the cases which proceeded to trial there were objections to the admission of the employment contract in evidence. The ground of the objection was that there was no proof of the execution of the contract on behalf of the defendant as required by law. It was proved that the plaintiffs had served continuously as teachers for the defendant during periods of eight years or more after the contracts were said to have been signed. Execution of the agreement, which sufficiently appeared from the declarations to have been in writing, had not been denied in the next succeeding pleading, as provided by Code, art. 75, sec. 28, subsec. 108. In overruling the objections, therefore, the trial judge committed no error. *Prudential Ins. Co. v. Devoe,* 98 Md. 584, 56 A. 809; *Citizens' Ins. Co. v. Conowingo Co.,* 113 Md. 430, 77 A. 378.

Another objection to the admission of the contract, in one of the cases, was that the evidence for the plaintiff tended to prove that she did not have a duly renewed certificate to teach at the time when she entered into the contract according to her testimony. In the other case tried on the facts it was objected that the date of the contract, as mentioned by the plaintiff, when testifying as a witness, differed from the date which the declaration stated. Originals of the contract not having been found and produced by the defendant in response to notice from the plaintiffs, blank forms were introduced in connection with testimony that they were similar to those regularly used at the period when the plaintiffs' signatures are said to have been attached to such agreements. The records do not admit of a reversal of the judgment on the ground of the objection just noted.

There was another evidence exception in one of the records,

but it was unimportant, and, as it is not mentioned in the appellant's brief, it will be treated, under our Rule No. 39, as having been abandoned.

For the reasons which have led us to approve the rulings of the lower court against the demurrers, we also hold that prayers for directed verdicts in favor of the defendant were properly refused, the averments of the declaration having been supported by competent evidence, and there being no defensive proof of facts which might justify a ruling that the court was without jurisdiction over the controversy. It was testified for the defendant, in one of the cases, that the school in which the plaintiff had been teaching was consolidated with three other one-room schools. But there was no testimony that it became necessary to dismiss any of the teachers because of that consolidation. In the only other case tried on the facts no evidence was offered by the defendant. It appeared, however, from the plaintiff's proof, that she was notified by the county superintendent of a request by the district school trustees for her transfer from the school, under their supervision, in which she had been teaching for a number of years. No reason was given for the request, but in consequence of it the plaintiff was removed from that school without being transferred to any other position. In the absence of evidence definitely explaining the reasons for the action of which the suits complain, the court could not hold that they were reasons sufficient in fact and law to entitle the defendant to have the controversy denied a judicial determination and referred exclusively to the public school authorities for decision.

In one of the cases there was testimony by the county superintendent contradicting the plaintiff's assertion that she signed the alleged contract with the defendant, but that issue of fact was submitted to the jury by an instruction granted at the defendant's request.

A rejected prayer of the defendant sought to have the jury instructed that, if the plaintiff in that case were found from the evidence to have withdrawn from the Teachers' Retire-

ment System, she was not entitled to recover any salary as a teacher after the date of such withdrawal. It appears from the testimony of the plaintiff that she became a member of the retirement system in 1927, and that she withdrew from it the funds to which she was entitled after her loss of employment as a teacher and because of her necessities resulting from that event. If there had previously been an actionable breach by the defendant of the contract under which the plaintiff was employed, her resort, thus compelled, to the funds which she had paid into the retirement system, and the consequent severance of her relationship with it, could not justly be considered a defense upon which the defendant had a right to rely as an absolute bar to her suit.

The other rejected prayers of the defendant were not mentioned in its brief on appeal.

In none of the rulings have we discovered any ground of reversal.

*Judgment affirmed, with costs.*

OFFUTT and SLOAN, JJ., dissent.