REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 2539
September Term, 2014

BAYANI LIBIT

v.

BALTIMORE CITY BOARD OF SCHOOL
COMMISSIONERS

Wright,
Kehoe,
Berger,

JJ.

Opinion by Berger, J.

Filed: January 29, 2016

This appeal arises from the decision of the Maryland State Board of Education (the "State Board") affirming the decision of the appellee, the Baltimore City Board of School Commissioners (the "Commissioners") to uphold the decision of the Chief Executive Officer for the Baltimore City Schools (the "CEO") to terminate appellant, Bayani Libit ("Libit").

On appeal, Libit presents three questions for our review,[1] which we consolidate and rephrase as the following question:

> Whether the State Board erred by affirming the CEO's termination of a teacher, who had not signed a State-mandated teacher's contract, and who had been employed beyond his probationary period.

For the reasons set forth below, we shall reverse the judgment of the Circuit Court for Baltimore City.

---

[1] The issues, as presented by Libit, are:

> 1. Did the State Board err in its Decision to affirm the termination of Bayani Libit when that Decision was premised on multiple errors of law, including the findings that Mr. Libit was not employed under the terms of the Regular Teacher's Contract and did not have tenure at the time of his termination?
>
> 2. Did the State Board err in its Decision to affirm the termination of Bayani Libit when the process through which termination was effectuated involved an unconstitutional and illegal denial of Mr. Libit's due process rights?
>
> 3. Did the State Board err in its Decision to affirm the termination of Bayani Libit when that Decision was not supported by substantial evidence in the record and was arbitrary, unreasonable, and unlawful?

**FACTUAL AND PROCEDURAL BACKGROUND**

Libit is a citizen of the Phillippines, and was employed as a teacher in the Baltimore City Public School System from 2005 until 2013. In 2005, when Libit was hired, he was granted a visa. In 2008, prior to the expiration of his original visa, Libit obtained an H-1B visa[2] that was conditioned on his continued employment. Libit's initial H-1B visa was valid between September 26, 2008, and June 27, 2011. Upon the expiration of his H-1B visa in 2011, Libit renewed his visa for a second three-year period. Libit's second H-1B visa was scheduled to expire on June 26, 2014. When Libit was hired in 2005, he held a conditional teaching certificate that was valid for two years. Thereafter, on July 1, 2006, Libit was awarded an Advanced Professional Certificate that was renewed in 2011, and is scheduled to expire in June of 2016.

On March 22, 2013, Libit was a party to an individual consultation with the school system's human capital staff where he was informed that he would not be retained for the 2013-2014 school year.[3] Subsequently, Libit received numerous communications reiterating that he was not being retained for the following school year, and providing him information regarding how to arrange travel back to the Philippines. Thereafter, Libit initiated the appeal

---

[2] An H-1B visa may be granted under the authority of 8 U.S.C. § 1101(a)(15)(H)(i)(b), and permits an alien to be admitted into the United States "to perform services . . . in a specialty occupation."

[3] Employees with the school system's human capital office are delegates of the CEO. ED § 4-304(b)(4)(I). Unlike Maryland's counties, where a county superintendent exercises the school board's executive functions, in Baltimore City the CEO "is the executive officer, secretary, and treasurer of the Board of School Commissioners." ED § 4-102.

process outlined in Md. Code (1978, 2014 Repl. Vol.) § 4-205(c) of the Education Article ("ED").

Libit's appeal was argued before a hearing examiner who rendered her decision on November 28, 2013. The hearing examiner observed that it was the school system's policy "that continued employment for foreign workers employed pursuant to an H-1B visa have satisfactory performance during their tenure with [the school system]." Additionally, the hearing examiner found that in the two years prior to his termination, Libit had received unsatisfactory performance evaluations.[4] Furthermore, the hearing examiner determined that because of Libit's status as an H-1B visa holder, Libit was "subject to termination at any time." Accordingly, the hearing examiner recommended that "the Board affirm the CEO's decision to terminate [Libit] for misconduct . . . ."

On January 28, 2014, the Commissioners convened for a public board meeting. At the board meeting, the Commissioners considered whether to adopt the recommendation of

---

[4] The school systems assesses teacher performance by means of an annual evaluation. The Commissioners maintain a scoring system that is used in a teacher's evaluation. Under the scoring system a teacher is deemed "proficient" if he or she scores between 86 and 100, a teacher is deemed "satisfactory" if he or she scores between 70 and 85, and a teacher is deemed "unsatisfactory" if he or she scores below 70. Libit received a score of 48 during the 2011-2012 school year, and 36 during the 2012-2013 school year.

3

the hearing examiner and affirm Libit's termination. Upon motion, the Commissioners accepted the recommendation of the hearing officer in a five-to-three vote.[5]

Subsequently, Libit appealed the Commissioners' decision to the State Board. In an opinion dated June 27, 2014, the State Board affirmed Libit's termination. The State Board determined that Libit was not entitled to the procedural protections generally afforded to teachers because "the due process protections of § 6-202 . . . presume[] a property interest in the employment." The State Board reasoned that Libit could not have a property interest in his continued employment due to the finite nature of his visa. The State Board, therefore, affirmed Libit's termination.

Following the decision by the State Board, Libit filed a petition for judicial review in the Circuit Court for Baltimore City. The circuit court found that Libit was not employed under a contract that afforded him any pre-termination rights in any way different than those held by an employee at-will. The circuit court further found that because Libit was an at-will employee, he was not entitled to the pre-termination protections afforded under

---

[5] At the public hearing on January 28, 2014, there was no discussion or debate as to the substance of the hearing examiner's recommendation. The Commissioners were advised by counsel to limit public discussion to "how certain matters are viewed by the Hearing Officer," and not the facts of the underlying controversy. The Commissioners' attorney advised that it would be inappropriate to discuss the "name of the employee, the nature of the allegations, [or] the recommendation of the Hearing Officer" at the public meeting. Rather, these topics were considered to be more appropriate for discussion in a closed session. Notwithstanding the attorney's advice, the chairperson of the Commissioners, Dr. Shanaysha Sauls, expressed that she had "vehement objections" to the hearing examiner's recommendation to affirm Libit's termination.

4

ED § 6-202(a). The circuit court, therefore, affirmed Libit's termination. This timely appeal

followed. Additional facts will be discussed as necessitated by the issues presented.

## STANDARD OF REVIEW

"'On appellate review of the decision of an administrative agency, this Court reviews

the agency's decision, not the circuit court's decision.'" *Long Green Valley Ass'n v. Prigel*

*Family Creamery*, 206 Md. App. 264, 274 (2012) (quoting *Halici v. City of Gaithersburg*,

180 Md. App. 238, 248 (2008)). Moreover:

> "Our review of the agency's factual findings entails only an
> appraisal and evaluation of the agency's fact finding and not an
> independent decision on the evidence. This examination seeks
> to find the substantiality of the evidence. That is to say, a
> reviewing court . . . shall apply the substantial evidence test to
> the final decisions of an administrative agency . . . In this
> context, substantial evidence, as the test for reviewing factual
> findings of administrative agencies, has been defined as such
> relevant evidence as a reasonable mind might accept as
> adequate to support a conclusion."

*Tomlinson v. BKL York LLC*, 219 Md. App. 606, 614 (2014) (alterations omitted) (quoting

*Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 568-69 (1998)). Furthermore,

we recognize that "the decisions of the State Board of Education are entitled to greater

deference than those of most other administrative agencies." *Patterson Park Pub. Charter*

*Sch., Inc. v. Balt. Teachers Union*, 399 Md. 174, 197 (2007) (citing *Bd. of Educ. of Talbot*

*Cnty. v. Heister*, 392 Md. 140, 155 (2006)).

With respect to an agency's legal conclusions, however, "judicial review is less

deferential . . . . [I]n a contested case, the APA permits the court, on judicial review, to

decide the correctness of the agency's [legal] conclusions and to substitute the court's judgment for that of the agency's." *Charles Cnty. Dept. of Soc. Servs. v. Vann*, 382 Md. 286, 295 (2004). With these principles in mind, we defer to the State Board's factual findings so long as they are supported by substantial evidence. We will, however, review the legal conclusions that are drawn therefrom *de novo*.

**DISCUSSION**

Libit contends that the State Board erred in concluding that the Commissioners were not bound to comply with the procedure outlined in ED § 6-202(a). Further, Libit maintains that the failure to comply with ED § 6-202(a) runs afoul of his procedural due process rights afforded under the Fourteenth Amendment to the U.S. Constitution. Finally, Libit avers that the decision to terminate him was unsupported by substantial evidence. The Commissioners argue that Libit's termination was proper because Libit was an at-will employee. As such, the Commissioners assert that Libit was not entitled to the protections afforded under ED § 6-202(a).

For the reasons that follow, we conclude that the Commissioners were required to abide by the procedural requirements set forth in ED § 6-202(a), and the Commissioners failed to do so with respect to Libit's termination. At the outset, we emphasize that, in our view, this case presents a narrow issue of statutory construction. Accordingly, we do not address the scope of the contractual agreement between the parties, whether Libit was denied due process, or whether there would be substantial evidence to support Libit's termination.

6

We merely hold that ED § 6-202(a) affords "teachers" certain pre-termination protections, Libit was a "teacher" protected by that statute, and that the Commissioners failed to abide by the procedures set forth in that statute.

## I.      Terminating Teachers Under Maryland Law

Libit contends that his termination was "illegal under State Law."  Under ED § 6-202(a)(1), "[o]n the recommendation of the county superintendent, a county board may suspend or dismiss a teacher . . . ."[6]  ED § 6-202(a)(1).  Additionally, "[b]**efore removing an individual**, the county board shall send the individual a copy of the charges against him and give him an opportunity within 10 days to request a hearing." ED § 6-202(a)(2) (emphasis added).  If requested, the hearing shall take place promptly, but not before 10 days after notice of the hearing.  ED § 6-202(a)(3).

The procedure set forth in ED § 6-202 applies to "teacher[s], principal[s], supervisor[s], assistant superintendent[s], [and] other professional assistant[s]." ED § 6-202(a)(1).  Critically, the provisions of ED § 6-202(a) outline a procedure whereby

_____

[6] Section 6-202 applies to decisions by the Commissioners to act upon the recommendation of the CEO, the same way that it applies to decisions of a county board to act upon the recommendation of a county superintendent.  We observe that Title Six purports to govern matters relating to "teachers and other personnel" without distinguishing between the leadership structures in Baltimore City as opposed to the rest of Maryland's counties.  Baltimore City has neither a "county superintendent" nor a "county board."  The terms "county superintendent" and "county board," however, are defined in another section of the code to include the CEO and the Commissioners, respectively.  *See* ED § 1-101 (d), and (e).  Accordingly, we accept the assertion of law set forth by the hearing examiner, and affirmed by the State Board, that "[i]n Baltimore City, the Chief Executive Officer of the Board of School Commissioners has the powers akin to those of a county superintendent."

the Commissioners will consider the termination of a teacher in the first instance, upon the recommendation of the CEO, so long as the teacher is provided an opportunity to contest the proposed termination. ED § 6-202(a); *Venter v. Bd. of Educ.*, 185 Md. App. 648, 671 (2009) ("Under Ed. § 6-202(a), the county board, not the county superintendent, makes the ultimate decision on suspension or dismissal."). "[I]n reality the [Commissioners] act[] in the manner of an impartial tribunal judging the charges made by one of its employees (the [CEO]) against another of its employees (the teacher) and the latter's defense to those charges." *Bd. of Educ. of Anne Arundel Cnty. v. Barbano*, 45 Md. App. 27, 29 (1980).

On the other hand, ED § 4-205(c) vests the county superintendent with the authority to "decide all controversies and disputes that involve: (i) [t]he rules and regulations of the county board; and (ii) [t]he proper administration of the county public school system."[7] ED § 4-205(c)(2). Many decisions regarding the hiring and termination of school personnel fall within the purview of the CEO's authority under ED § 4-205(c)(2). Section 4-205(c)(3) further provides a process whereby one may appeal the CEO's decision to the Commissioners, and then to the State Board. ED § 4-205(c)(3). Accordingly, pursuant to the process set forth in ED § 4-205(c), the Commissioners exercise an appellate function with regard to the decisions of the CEO made under the authority of that section.

---

[7] For the reasons set forth in note 6, *supra*, ED § 4-205(c)(2) is applicable to the decisions of the CEO, the same way that it is to the decisions of a county superintendent.

8

The critical distinction between ED §§ 4-205(c) and 6-202(a), is that under § 4-205(c), an aggrieved party may argue against an adverse decision rendered by the CEO before the Commissioners, whereas under § 6-202(a), an individual subject to its provisions may argue to the Commissioners that he should not be terminated **prior** to his termination. *Compare* ED § 4-205(c), *with* ED § 6-202(a). Accordingly, the CEO has broad authority to make personnel decisions with respect to most staff, with the exception of "teacher[s], principal[s], supervisor[s], assistant superintendent[s], [and] other professional assistant[s]." ED § 6-202(a)(1). The negative corollary is that "teacher[s], principal[s], supervisor[s], assistant superintendent[s], [and] other professional assistant[s]" possess certain pre-termination rights that are not afforded to other school personnel. *Id.*

In the instant action, Libit was informed by a designee of the CEO that his employment would be terminated at the conclusion of the 2012-2013 school year. Libit's termination was not decided **in the first instance** by the Commissioners through the process proscribed by ED § 6-202(a). Rather, Libit's termination was a unilateral decision rendered by a designee of the CEO, which was subsequently affirmed by the Commissioners. The question, then, is whether Libit's termination was proper under the provisions of ED § 4-205(c), or whether Libit falls within a class of persons protected by the provisions of ED § 6-202(a).

The title and text of ED § 6-202 purport to apply to "teachers, principals, and other professional personnel." ED § 6-202. By contrast, we have held that "noncertificated

9

technical support employees," and even "professional noncertificated employees" do not qualify for the protections afforded under ED § 6-202(a), and, accordingly, may only avail themselves of the appellate review process outlined in ED § 4-205(c). *See e.g.*, *Venter*, *supra*, 185 Md. App. at 680 (holding that a Chief Business Officer is not "other professional personnel" under § 6-202(a)); *Livers v. Bd. of Educ. of Charles Cnty.*, 101 Md. App. 160, 164 (1994) (observing that a Building Equipment Technician is governed by the provisions of ED § 4-205(c)); *see also Wilkins v. Bd. of Educ.*, MSBE Opinion No. 06-10 (2006) (finding that a Chief Financial Officer is not protected by § 6-202(a)); *Walsh v. Bd. of Educ.*, MSBE Opinion No. 00-54 (2000) (finding that a Chief Information Technology Officer was not protected by § 6-202(a)).

Here, we perceive no ambiguity as to Libit's status as a "teacher." Indeed, the hearing examiner, whose findings were incorporated in the Commissioners' decision affirming Libit's termination, found that Libit "was assigned to James McHenry Elementary School . . . **as a teacher**." (emphasis added). Likewise, in its opinion, the State Board expressly noted that Libit was employed "as a teacher." The parties, however, argue as to whether Libit had achieved tenure.

Notably, the Commissioners have the responsibility to set forth qualifications necessary for teachers to obtain tenure. ED § 6-201(f); *Bd. of Educ. of Carroll Cnty. v. Carroll Cnty. Educ. Ass'n, Inc.*, 53 Md. App. 355, 358 (1982) ("[T]he qualifications, tenure and compensation of appointees 'shall be determined by the county board.'" (emphasis

10

omitted) (quoting ED § 6-201(f))). We further observe that a teacher is generally considered to be tenured upon the expiration of his probationary period. *See Barbano*, *supra*, 45 Md. App. at 28 ("[T]wo years are to be served in such capacity before a teacher may be cloaked with tenure."); *Parker v. Bd. of Educ. of Prince George's Cnty.*, 237 F. Supp. 222, 226 (D. Md. 1965) ("[T]eachers who have served more than two years in the school system have a right to a continuous tenure, from which they may be removed only for cause. . . .").[8] In this case it is unnecessary for us to determine whether Libit was tenured, or when Libit became tenured. Rather, it is sufficient for our purposes that Libit qualifies as a "teacher" subject to the provisions of ED § 6-202(a).

A textual analysis of ED § 6-202(a) demonstrates that, generally, the Commissioners are required to decide whether to terminate a teacher in the first instance. Nevertheless, the Commissioners' argue that because Libit never signed a "Regular Contract" he is not entitled to the protections afforded under ED § 6-202(a). "Regular Contract," in this context, is a term of art that refers to a specific agreement created by the State Board, and set forth verbatim in COMAR 13A.07.02.01(B)(2). The parties disagree as to whether Libit's employment is governed by the "Regular Contract," COMAR 13A.07.02.01(B)(2); the "Provisional Contract," COMAR 13A.07.02.01(C); or whether Libit is merely an at-will employee who may be terminated for any reason. We recognize that, by an objective

---

[8] When *Barbano* and *Parker* were decided the State-mandated probationary period was two years. In 2010, the probationary period was extended, by legislative amendment, to three years. ED § 6-202(b)(1).

11

standard, the parties never manifested assent to the "Regular Contract." Likewise, we recognize that the "Provisional Contract" the parties signed expired in June the year after it was signed in accordance with its plain and unambiguous terms. The State Board found that Libit was not governed by the "Regular Contract" due to his H-1B status and the fact that he never signed the "Regular Contract."

We question whether any agreement between the parties can be construed to be for an employment at-will when the State Board's regulations expressly provide that "[e]xcept as provided in §C of this regulation, for employees who hold professional certificates, the form entitled "Regular Contract" **shall be used and others may not be recognized**," COMAR 13A.07.02.01(B)(1) (emphasis added); *see also Zimmer-Rubert v. Bd. of Educ. of Balt. Cnty.*, 179 Md. App. 589, 602 (2008) ("[A]ll teachers in the State have identical contracts on forms mandated by the State Board."). Additionally, the Commissioners' argument that upon the expiration of the provisional contract Libit would become an at-will employee and receive fewer protections than he previously had under the provisional contract is counter-intuitive, and appears to run contrary to the purposes of ED § 6-202 and COMAR 13A.07.02.01. In this appeal, however, we need not decide the scope of the parties' contractual agreement or whether the State Board has acted in a manner consistent with its regulations. Rather, we hold that Libit's pre-termination rights flow not from his agreement with the Commissioners, but in accordance with the General Assembly's directive under ED § 6-202(a).

12

Without commenting on the terms of the contractual agreement between the parties, we are cognizant that in Maryland, a contract for employment is presumptively construed to be an agreement for at-will employment. *Towson Univ. v. Conte*, 384 Md. 68, 79 (2004) ("[E]mployment in Maryland is presumptively at-will") (citing *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 421-22 (2003)); Stanley Mazaroff & Todd Horn, *Maryland Employment Law* § 3.02[1] (2d. ed. 2013) ("Maryland courts have held that an employment relationship presumptively is at will. . . ."). In the context of an at-will employment, absent a contravening public policy, an employer may generally terminate an employee "for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair." *Towson Univ.*, *supra*, 384 Md. at 82. In the instant case, however, by promulgating ED § 6-202(a), the General Assembly has articulated a contravening public policy that overcomes the presumption in favor of an at-will employment and affords additional protections to those who fall within its provisions.

Moreover, the CEO was not empowered to terminate Libit unilaterally on the grounds that Libit was a probationary teacher. Under ED § 6-202(b), the General Assembly excepts teachers who are employed under a probationary period from the procedures outlined in § 6-202(a). The probationary period of employment covers a three-year period, whereby the new teacher is provided a one year contract that may be renewed. ED § 6-202(b). During the probationary period a teacher may only be terminated for cause under the provisions of ED § 6-202(a). *Parker*, *supra*, 237 F. Supp. at 226 (citing *Cnty. Bd. of Educ. for Wash.*

13

*Cnty. v. Cearfoss*, 165 Md. 178, 187 (1933)). At the conclusion of the probationary contract, however, a teacher may simply be denied a new contract without running afoul of ED § 6-202(a). ED § 6-202(b); *Parker*, *supra*, 237 F. Supp. at 226 ("The standard teachers' contract, which permits termination without cause at the end of the first and second contract years, does not violate [§ 6-202].").

Here, Libit was employed as a teacher under a provisional contract in August of 2005. Regardless of whether the Commissioners considered Libit to be bound by the terms of the provisional contract through the duration of his employment, Libit could only be in the probationary period of his employment for a period of three years after his initial hire. In this case, Libit was informed that he would be terminated in 2013, almost eight years after he was hired. Accordingly, Libit could not have been in a probationary period under ED § 6-202(b), and was therefore subject to the provisions of § 6-202(a).

The Commissioners contend that Libit's termination was appropriate because his employment was conditioned on continued satisfactory performance, and that Libit had received unsatisfactory performance reviews for the two years prior to his termination. To be sure, Libit is bound to maintain the qualifications, and comply with the terms of employment properly promulgated under ED § 4-311(a)(1), and (2)(iii) ("[T]he [Commissioners] may . . . [e]stablish terms of employment . . . ."). Upon the satisfaction of certain conditions, however, ED § 6-202(a) expressly reserves the authority to adjudicate whether the terms of a teacher's employment have been violated to the Commissioners to

14

be decided in the first instance by the Commissioners. When the CEO believes that a teacher has failed to comply with a condition of his or her employment, rather than terminate the teacher, ED § 6-202(a) mandates a process by which the CEO recommends the teacher's termination to the Commissioners, and the Commissioners decide whether to terminate the teacher in the first instance. ED § 6-202(a).

We accept that Libit was obligated to comply with certain conditions to maintain his employment. For the reasons set forth herein, however, we hold that the CEO's termination of Libit pursuant to ED § 4-205(c), runs contrary to the provisions of ED § 6-202(a), which vests the authority to terminate teachers with the Commissioners in the first instance. Notably, we do not address whether Libit was employed under the terms of the "Regular Contract" or whether Libit's termination in violation of ED § 6-202(a) runs afoul of the State's obligation to refrain from impairing Libit's property interests in the absence of procedural due process under the Fourteenth Amendment to the U.S. Constitution.

Moreover, we do not comment on the merits of the CEO's assertion that Libit's performance was unsatisfactory, or whether there would be substantial evidence for the Commissioners to reach such a finding. Rather, we hold only that the Commissioners were obligated to comply with the procedures of ED § 6-202(a). This obligation arose from the General Assembly's directive and exists independent of any contractual agreement between the parties. We, therefore, hold that the Maryland Code requires compliance with ED § 6-202(a) **before** a "teacher" may be terminated. Further, the failure to comply with

15

that procedure here resulted in Libit's termination without affording Libit the opportunity to be heard before he was terminated.

## II.      Section 6-202 Is Not Preempted By 8 U.S.C. § 1101(a)(15)(H)(i)(b)

The Commissioners further maintain that Libit was afforded sufficient process because "the finite nature of [Libit]'s visa necessarily limited his employment expectations" and "[u]nder federal law, an employer who terminates an H-1B visa employee prior to expiration of the visa has very few obligations to the employee." The Commissioners imply that the federal H-1B program, which gives employers the discretion to sponsor foreign employees, necessarily preempts laws that would otherwise obligate an employer to provide greater pre-termination rights than those afforded to an at-will employee. We are unpersuaded.

Pursuant to the Supremacy Clause of the U.S. Constitution, the federal Constitution "and the Laws of the United States which shall be made in Pursuance thereof . . . under the Authority of the United States [are] the supreme Law of the Land." U.S. Const. Art VII, cl.2. Accordingly, "valid federal legislation and regulations may preempt state or local laws or regulatory actions." *Harrison v. Schwartz*, 319 Md. 360, 364 (1990). State law may be preempted when Congress expressly articulates its intent to do so, when the federal law is "sufficiently comprehensive to occupy a given field or to make clear that Congress left no room for supplementary state legislation," or when the state law "actually conflicts with federal law" *Bd. of Tr. of Emp. Ret. Sys. of Balt. v. Mayor & City Council of Balt. City*, 317

16

Md. 72, 115 (1989). Here, Congress has not expressly articulated a prohibition on state regulations regarding the terms of teachers' employment, nor is there a federal statutory or regulatory scheme that would render the entire field of teachers' employment preempted. The question, then, is whether the federal statutes and regulations relating the H-1B program actually conflict with ED § 6-202(a).

Conflict preemption occurs when a "state law actually conflicts with federal law and such a conflict arises when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or where "compliance with both statutes is impossible." *Hill v. Knapp*, 396 Md. 700, 712, 712 n.5 (2007). Under 8 U.S.C. § 1101(a)(15)(H)(i)(b), an alien may be admitted into the United States to "perform services . . . in a specialty occupation." In order for an alien to obtain a visa under the H-1B program, the alien must be sponsored by a domestic employer, here, the Commissioners. Further, the Commissioners must comply with certain requirements set forth in 8 C.F.R. § 214.2(h)(2)(i)(A). An employer's participation in the H-1B program is, of course, discretionary. *See* 8 C.F.R. § 214.2(h)(2)(i)(A) ("A United States employer **seeking to classify** an alien as an H-1B . . . temporary employee must file a petition . . ." (emphasis added)).

Critically, we are not presented with a circumstance where a Maryland law compels an employer to undergo a process which is, pursuant to federal law, discretionary.[9]  Rather, in this case, the Commissioners first terminated Libit, and then, pursuant to federal law, complied with the process to revoke his visa.  Here, Libit held an H-1B visa that was valid until June of 2014.  As a result of Libit's termination, his visa was revoked.  We recognize that under federal law an employer incurs certain obligations as a result of its decision to terminate an H-1B employee prior to the expiration of their visa.  *See e.g.*, 8 C.F.R. § 214.2(h) (requiring the employer to give notice of terminations to United States Citizenship and Immigration Services, and, in some cases, provide transportation to an employee's country of origin).  Maryland laws with respect to whether the initial termination was proper, however, do not conflict with federal regulations that impose certain obligations on an employer upon the termination of an H-1B visa holder.  To hold otherwise would require that every H-1B employee be an at-will employee notwithstanding any contract, state law, or local law to the contrary.

---

[9] We emphasize, however, that this holding should not be construed to imply that ED § 6-202(a) could not be construed to compel the Commissioners to attempt to renew Libit's visa.  The question as to whether ED § 6-202(a) could obligate the Commissioners to seek to renew Libit's visa is not before us and an opinion to that effect would be advisory.  Indeed, the critical distinction in this case is that the hearing examiner found and the State Board affirmed that Libit was "terminated for misconduct."  The question as to whether the same outcome would have been mandated if the Commissioners merely allowed Libit's visa to lapse, is not before us.

Here, we hold that Libit's status as an H-1B visa holder does not give the Commissioners a license to disregard the procedures set forth in ED § 6-202(a). The provisions set forth in ED § 6-202(a), and the federal statutes and regulations that govern the H-1B program exist independently of each other. Although these authorities apply simultaneously, they do not conflict with each other so as to preempt the Maryland statute. We, therefore, hold that the federal statutes and regulations with respect to the federal H-1B program do not preempt the pre-termination procedures mandated under ED § 6-202(a) in this case.[10]

## III. Conclusion

For the reasons set forth herein, we reverse the decision of the State Board to affirm Libit's termination. We emphasize that we do not address the scope of the contractual employment agreement between the parties, whether the failure to comply with ED § 6-202(a) violates the Fourteenth Amendment to the U.S. Constitution, or whether there was substantial evidence to support Libit's termination. Rather, we hold that Libit was employed as a "teacher" for more than three years. As a "teacher" who had been employed for more than three years, Libit was entitled to the procedural protections afforded to him

---

[10] The Commissioners argued before the State Board that they "terminated [Libit] as required by federal law." The State Board, for the reasons articulated herein, properly rejected this argument. Indeed, we agree with the State Board that Libit was not terminated because his visa expired. Rather, Libit was terminated because the CEO determined that his performance was unsatisfactory, and as a result of his termination, Libit's visa was revoked. Accordingly, although we reverse the decision of the State Board, we agree with the State Board's finding that Libit's termination was not mandated by federal law.

19

pursuant to ED § 6-202(a). As such, the CEO's decision to terminate Libit without abiding

by the procedural safeguards embodied in ED § 6-202(a) amounted to a violation of that

statute. Further, we hold that Libit's status as an H-1B visa holder does not absolve the

Commissioners from compliance with ED § 6-202(a).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THE STATE BOARD OF EDUCATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.**