972 A.2d 328

**Bruce M. VENTER**

v.

**BOARD OF EDUCATION of Howard County, et al.**

**No. 2795, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

June 1, 2009.

**650**

652

Allen R. Dyer of Ellicott City, for appellant.

Judith S. Bresler (Eric C. Brosaides, Reese & Carney, LLP on the brief), Columbia, for appellee.

Panel: JAMES R. EYLER, WOODWARD, THIEME and RAYMOND G., JR. (Retired, Specially Assigned), JJ.

WOODWARD, J.

This appeal arises from the termination of employment of appellant, Bruce M. Venter, as the Chief Business Officer ("CBO") for the Howard County Public Schools System ("HCPSS") by the Superintendent of HCPSS, John O'Rourke. Specifically, appellant appeals from the Order of the Circuit Court for Howard County, dated January 11, 2007, affirming the Opinion issued by the Maryland State Board of Education ("State Board"), which upheld a decision of the Board of Education of Howard County ("the local board") that Superintendent O'Rourke was "within his statutory authority to terminate [appellant's] employment," and that the decision to terminate was not "without rationale or in disregard of the facts and circumstances so as to have been arbitrary, unreasonable or illegal." Appellees to this action are the local board and the State Board.

Appellant presents five questions for our review,[1] which we have consolidated and rephrased:

---

1. Appellant presents the following questions in his brief:

 I. Did the local superintendent have the legal authority to dismiss Appellant?

 II. Did the circuit court err when it ruled the local board's hearing officer properly denied Appellant an open hearing?

 III. Did the circuit court err when it struck both the *Scheduling Order* and *Appellant's Amendment by Interlineation seeking Monetary Dam-*

I. Did the State Board properly determine that appellant's appeal of his termination was governed by Section 4–205(c) of the Education Article ("Ed."), Md.Code (1978, Repl.Vol.2008) rather than Ed. § 6–202?

II. Did the State Board properly determine that appellant was not entitled to an open hearing before the local hearing examiner?

III. Did the circuit court err in denying appellant discovery and declaratory relief?

IV. Is this Court required to report its opinion in this case?

For the following reasons, we shall affirm the judgment of the circuit court.

### *FACTUAL BACKGROUND*

In the instant appeal, appellant does not challenge the merits of the termination decision. Therefore, we set out only those facts necessary to address the issues presented.

On September 20, 2001, the local board voted to approve Superintendent O'Rourke's recommendation that appellant be appointed as CBO of HCPSS. The CBO position reported directly to the Deputy Superintendent and was salaried on the Administrative Technical Management payscale at Grade 31, which, at the time of appellant's hiring, was $125,000 per year.

Prior to accepting the position, appellant earned a Doctor of Education in Educational Administration and Policy Studies from the State University of New York at Albany in 1986 and served as a certificated public school employee in two different states, New York and Virginia. The CBO position called for an individual with a masters degree in "education administration, finance, accounting, and/or a related field." Although

---

ages and *Declaratory and Injunctive Relief under the Public Informa-tion Act?*

IV. If Appellant's *Amendment by Interlineation* was proper, does the PIA cover computer file versions of transcripts?

V. Must the Court report its Opinion in this matter? rephrased:

(Italics in original).

certification in Maryland was not listed as a job requirement for the position of CBO of HCPSS, appellant attached copies of his New York and Virginia certificates to his application for employment to HCPSS. Appellant did not hold any certificate in Maryland at the time of his hiring, and the parties to the instant appeal stipulated that appellant never submitted a request for any such certification to either the State Superintendent of Schools or the State Board. When Superintendent O'Rourke recommended the appointment of appellant for the position of CBO, he was aware of appellant's career in New York and Virginia and agreed that appellant had the professional experience and educational level that was "exactly what the job description and the posting of the job called for."

## A.

### CBO

Appellant's position as CBO vested him with significant responsibilities. Among those were "the leadership, organization, and operation of all matters related to business affairs, school planning and construction, maintenance and operations, food services, transportation, and school facilities." Appellant's "essential job duties" entailed, *inter alia*, "[d]irect[ing] the financial affairs and operations of the school system," "[d]evelop[ing] and prepar[ing] the annual Operating Budget and the Capital Budget and the Capital Improvement Program for the school system ...," "[a]ssign[ing] and control[ing] the allocation of funds as provided for in the budget ...," "explain[ing] and interpret[ing] the school system's financial affairs to the School Board, the County Council, the public and other necessary parties," and "[d]evelop[ing] and maintain[ing] a comprehensive facilities plan to meet the growth needs of the school system...."

## B.

### The 12th High School Project

As CBO, appellant was responsible for overseeing the planning and construction of a new high school, known as North-

ern High School or "the 12th High School." In managing the project, appellant was faced with a deadline of August 2005 for the completion of the high school's construction, in time for the 2005–06 school year.

Communications between appellant and John C. Jenkins, the construction manager of the 12th High School project, raised concerns regarding the completion of the school in time to meet its anticipated opening date. In a letter dated May 5, 2003, Jenkins informed appellant that the September 2005 "start date is not a certainty and will require some changes to the normal process and procedures to be realized." On June 18, 2003, Jenkins wrote appellant:

[T]he [local board] must award and issue notice to proceed in accordance with the dates shown in the attached schedule, or earlier if possible. **This means that the Site Contract must be awarded no later than the [local board] meeting of 8/7/03.**

The award of the first two groups is critical in order to take advantage of the time before winter weather.

Finally, the schedule only works if we have a grading permit by 9/1/03, and a building permit by 11/1/03. The 9/1/03 appears to be very possible.

(Emphasis added).

On July 7, 2003, Jenkins informed appellant:

**The plan and schedule discussed in the letter is predicated upon award of the contract by the [local board] by 8/14/03** .... [T]here [may] be no [local board] meeting on 8/14/03.... If the award has to await until 8/28/03, the whole plan needs to be restructured and revised before the 7/16/03 Pre-bid meeting. **A slippage in the award date will cost the project 12% of the good weather period remaining until the 1st winter in the construction schedule which was already starting 2 months late.**

(Emphasis added).

Then, on July 31, 2003, Jenkins wrote:

As planned, in order to expedite as much site work as possible before winter, it is necessary to be ready to start as soon as the pending appeal is dismissed. . . . Waiting for an 8/28 award, or the 9/17/03 motion dismissal, deteriorates significantly the amount of work that can be done this Fall.

\* \* \*

**The bottom line is that if [HCPSS] wants to maintain a chance to open in Fall of 2005, they must take the action and the associated risk with award of the site work, by 8/14/03, and the immediate notice to proceed with submittals.**

(Emphasis added).

No action was taken by the local board on the site work contract in August of 2003. Finally, on September 3, 2003, Jenkins warned appellant:

The current situation is as follows:

1. The Site Package previously bid was not awarded on 8/7 as planned and forecast in the bid documents.

**2. As of 9/3/03 the site Package is still not awarded.** We have been told that [HCPSS] had elected to avoid the risk of an early award and wait until a ruling was issued on the motion to dismiss the appeal of the Ground Water Discharge Permit which is due by 9/17/03.

\* \* \*

**There is a very real possibility that site work might not advance in the two months before winter to the point needed for building work to start . . . .**

**In light of the above, as we discussed at our meeting today we have the following:**

**If HCPSS embarks on an effort to complete the project by 8/05, based upon the current situation, there would only be a 50% chance of success.** A complex schedule will have to be developed, and terms and conditions established to promote performance. There is a potential to add 15% to

the cost of the project. **Everything must fall favorable to be successful** . . . .

. . . . HCPSS should not embark on the effort to be ready for [F]all 8/05 opening if they cannot tolerate the real potential for a late start of a month or two in the [F]all of 2005. If there is no tolerance for slippage, they should plan for a midterm completion.

(Emphasis added).

Notwithstanding Jenkins' repeated warnings of the possible consequences of failing to award the site work during the summer of 2003, appellant never informed the local board or the Superintendent about this threat to the construction schedule. The only communication on the subject from appellant was a June 30, 2003 memorandum to the local board that contained a single sentence warning: "Even the best case scenario puts tremendous pressure on the construction schedule based on information put together by the project's construction manager."

## C.

### Appellant's Termination

In early September 2003, Mark Blom, HCPSS General Counsel and Chief of Staff, became aware of the problem with the construction schedule for the 12th High School project. Upon learning that Superintendent O'Rourke and other senior administrators had not been informed of the dire nature of the situation, Blom initiated an investigation into the matter. Based on the results of the investigation, Superintendent O'Rourke asked to meet with appellant. The meeting between Superintendent O'Rourke and appellant took place on September 5, 2003.[2] Appellant was unaware of the reason for the meeting and did not bring any materials with him. The meeting lasted about fifteen minutes and, at its conclusion, the Superintendent informed appellant that he was terminating

---

2. Also present at the meeting were Blom and appellant's immediate supervisor, Dr. Kimberly Statham.

appellant's employment as CBO of HCPSS. In a letter formally acknowledging appellant's termination, the Superintendent wrote, in relevant part:

> I base my decision in this matter on your inability to meet my expectations of providing consistent, sound leadership and judgment in effectuating your responsibilities in a cabinet level position.

> ... [Y]ou demonstrated poor judgment when you did not brief the [local board] or me concerning critical information about the construction schedule of Northern High School that resulted in the [local board] making decisions without the benefit of complete and thorough information.

## PROCEDURAL HISTORY

On October 3, 2003, appellant appealed his termination directly to the State Board. In response to appellant's appeal, the State Board notified appellant by letter dated October 7, 2003, that appellant "has not submitted the matter for review by the [local board] in accordance with the mandates of [Ed.] § 4–205(c)." The State Board informed appellant that, if appellant was not satisfied after an appeal was taken to the local board and the local board ruled on the matter, appellant could then appeal that decision to the State Board.

Thereafter, appellant noted an appeal to the local board, which appointed a hearing examiner who conducted a six-day evidentiary hearing. On October 13, 2004, the hearing examiner recommended that the local board uphold Superintendent O'Rourke's termination of appellant's employment. The basis for the recommendation was that (1) the appeal to the local board was timely filed; (2) appellant was an at will employee subject to termination by the superintendent and was not a "professional" employee under Ed. § 6–202; (3) appellant received appropriate due process both pre-termination and post-termination; and (4) appellant failed to sustain his burden of proof, pursuant to Ed. § 4–205(c), that his termination was arbitrary, unreasonable, or illegal.

The local board, in a unanimous Decision and Order dated December 15, 2004, adopted the findings, conclusions, and recommendations of the hearing examiner, thereby upholding Superintendent O'Rourke's decision to terminate appellant. The local board concluded:

The Board must conclude, based on the evidence presented, that a reasoning mind could have reasonably found, as the Superintendent did, that [appellant] breached his duty to provide all of the substantive information about the threats to the construction schedule to the Superintendent and Board at a critical time in the decision-making process for the 12th [H]igh [S]chool. While the Board would have taken different action in response to this breach, the Superintendent was within his statutory authority to terminate [appellant's] employment. We cannot conclude, based on the evidence presented, that the Superintendent's decision was without rationale or in disregard of the facts and circumstances so as to have been arbitrary, unreasonable or illegal.

The Board upholds the Superintendent's decision in this case, as we believe we must given the facts and based on the applicable burden of proof. However, the Board acknowledges the skills [appellant] has and brought to his job as Chief Business Officer with HCPSS. In particular, as the record shows, [appellant] was an effective liaison to community groups and was responsive to questions from Board members. Also, as shown in the record, [appellant] had prior satisfactory performance evaluations. The Board does not condone the unacceptable manner in which the termination was carried out by the former Superintendent. Therefore, the Board asks the Superintendent to review the benefits provided to [appellant] to determine if he received all benefits normally accorded to an employee who separates from employment with HCPSS and to take appropriate action based on his review.

Appellant appealed the local board's decision to the State Board, which, in an opinion issued June 29, 2005, affirmed the decision of the local board. In its opinion, the State Board

decided that the appeal procedures of Ed. § 6–202 were not available to appellant because appellant did not possess the requisite certifications of a "professional assistant" as specified in Ed. § 6–201(e). Section 6–201(e), the State Board explained, required a "professional assistant" to hold "an appropriate certificate from the State Superintendent issued in accordance with the rules and regulations of the State Board." The Board rejected appellant's claim that the Section 6–201(e) requirement was satisfied by appellant's certifications in New York and Virginia. Those certifications, the State Board indicated, may have made appellant eligible for Maryland certification, but were not a certification in Maryland. Instead, the State Board ruled that appellant's appeal was governed by Ed. § 4–205. The State Board also determined, *inter alia*, that appellant was not entitled to have open proceedings before the hearing examiner, concluding that "the local board has demonstrated a reasonable and rational basis for keeping the proceedings before the local hearing officer and oral argument before the local board closed in this matter." [3]

---

**3.** In addition to appellant's contentions that he was entitled to the procedural protections outlined in Ed. § 6–202, as well as an open proceeding before the hearing examiner, appellant argued to the State Board that he (1) was adversely affected by a conflict of interest resulting from Blom serving as both General Counsel of HCPSS and Chief of Staff to the Superintendent; (2) was denied due process; and (3) should be awarded legal fees and expenses incurred as a result of his termination.

Failing to find any adverse effect on appellant, the State Board decided that appellant's conflict of interest argument was meritless. The State Board also concluded that appellant did not establish any due process violations, as appellant was given (1) notice of and the reasons for Superintendent O'Rourke's termination decision, (2) the opportunity to respond, and (3) "a full evidentiary hearing where he was represented by counsel and had the opportunity to present evidence, testimony, and argument." On the merits, the State Board stated that "[t]he record in this case is replete with communications to [a]ppellant regarding the critical nature of the construction schedule and the projected inability to meet the opening date for the 12th High School that he failed to bring to the attention of the superintendent or the local board." Finding the local board's affirmance of appellant's termination "not arbitrary, unreasonable, or illegal," the State Board affirmed the decision of the local board. Such affirmance, according to

On July 22, 2005, appellant filed in the Circuit Court for Howard County a Petition for Judicial Review and Declaratory Judgment, which contained seven counts: (1) "Review of [the Local Board's] Action;" (2) "Declarations Re: Interstate Agreement & *Ultra Vires* Acts;" (3) "Declaration Re: General Counsel/Chief of Staff & Conflict of Interest;" (4) "Declaration Re: Attorney Fees;" (5) "Declaration Re: Right to an Open Proceeding;" (6) "Declaration Re: Right to a Hearing Transcript Copy;" and (7) "Review of the Maryland State Board's Decision." On February 14, 2006, appellant amended his Petition by adding an additional count for declaratory relief relating to certain documents alleged to have been denied under the Maryland Public Information Act.[4] A hearing on appellant's Petition was held on March 16, 2006. In a Memorandum Opinion dated January 9, 2007, and Supplemental Memorandum and Order dated January 11, 2007, the circuit court (1) affirmed the Opinion of the State Board that upheld the decision of the local board affirming the Superintendent's termination of appellant's employment, and (2) denied all declaratory relief sought by appellant. Appellant timely noted an appeal to this Court.

## *DISCUSSION*

### A.

### Standard of Review

In reviewing the decision of an administrative agency " 'we reevaluate the decision of the agency, not the decision of the lower court.' " *Days Cove Reclamation Co. v. Queen Anne's County*, 146 Md.App. 469, 484, 807 A.2d 156 (quoting *Gigeous v. E. Corr. Instit.*, 363 Md. 481, 495–96, 769 A.2d 912 (2001)), *cert. denied*, 372 Md. 431, 813 A.2d 258 (2002). We examine whether the agency's decision is " 'in accordance with

---

the State Board, rendered appellant's request for legal fees and expenses moot.

4. Appellant also sought unspecified statutory and punitive damages.

the law or whether it is arbitrary, illegal, and capricious.' " *Md. Dep't of the Env't v. Ives,* 136 Md.App. 581, 585, 766 A.2d 657 (citations omitted), *cert. denied,* 364 Md. 462, 773 A.2d 514 (2001). Thus, our role is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). When applying the substantial evidence test, we determine whether the record contains " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Md. State Police v. Warwick Supply & Equip. Co., Inc.,* 330 Md. 474, 494, 624 A.2d 1238 (1993) (quoting *State Admin. Bd. of Election Laws v. Billhimer,* 314 Md. 46, 58–59, 548 A.2d 819 (1988)). When reviewing an agency's conclusions of law, " 'we may substitute our judgement for that of the agency if there are erroneous conclusions of law.' " *Ives,* 136 Md.App. at 585, 766 A.2d 657 (quoting *Gigeous,* 132 Md.App. at 494, 752 A.2d 1238). When we decide "whether the agency's conclusions were premised on an error of law, however, we ordinarily give 'considerable weight' to 'an administrative agency's interpretation and application of the statute which the agency administers.' " *Montgomery County v. Rotwein,* 169 Md.App. 716, 727, 906 A.2d 959 (2006) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376 (1999)).

## B.

### Governing Statute on Appeal

■ The primary issue in this case is whether appellant's appeal to the local board was governed by the procedures set forth in Ed. § 6–202, or whether appellant was entitled only to administrative review of his termination pursuant to Ed. § 4–205(c). Relevant provisions of the Education Article provide:

### § 6–201. Appointment, tenure, and qualifications.

(a) *Authority of county board to employ personnel.*—The county board shall employ individuals in the positions that

the county board considers necessary for the operation of the public schools in the county.

(b) *Appointment of professional personnel.*—(1) The county superintendent shall nominate for appointment by the county board:

(i) **All professional assistants of the office of county superintendent;** and

(ii) All principals, teachers, and other certificated personnel.

(2) As to these personnel, the county superintendent shall:

(i) Assign them to their positions in the schools;

(ii) Transfer them as the needs of the schools require;

(iii) Recommend them for promotion; and

(iv) Suspend them for cause and recommend them for dismissal in accordance with § 6–202 of this subtitle.

(c) *Appointment of clerical and nonprofessional personnel.*—(1) Except in Worcester County and Baltimore City, the county superintendent shall appoint clerical and other nonprofessional personnel.

\* \* \*

(d) *Appointment of supervisory and administrative personnel to be within certain ratios.*—(1) Supervisory and administrative personnel shall be appointed in each county in accordance with ratios established by the rules and regulations of the State Board and within the ratio established under § 2–205(m) of this article.

(2) These personnel shall include:

(i) Supervising or helping teachers;

(ii) Supervisors of pupil personnel I;

(iii) Supervisors of pupil personnel II; and

(iv) Visiting teachers.

(e) *Certificate necessary.*—**An individual may not be appointed as a professional assistant or to any position listed in subsection (d) of this section unless he holds**

the appropriate certificate from the State Superintendent issued in accordance with the rules and regulations of the State Board.

(Emphasis added).

§ 6–202. Suspension or dismissal of teachers, principals, and other professional personnel.

(a) *Grounds and procedure for suspension or dismissal.*—(1) On the recommendation of the county superintendent, a county board may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant for:

(i) Immorality;

(ii) Misconduct in office, including knowingly failing to report suspected child abuse in violation of § 5–704 of the Family Law Article;

(iii) Insubordination;

(iv) Incompetency; or

(v) Willful neglect of duty.

(2) Before removing an individual, the county board shall send the individual a copy of the charges against him and give him an opportunity within 10 days to request a hearing.

(3) If the individual requests a hearing within the 10–day period:

(i) The county board promptly shall hold a hearing, but a hearing may not be set within 10 days after the county board sends the individual a notice of the hearing; and

(ii) The individual shall have an opportunity to be heard before the county board, in person or by counsel, and to bring witnesses to the hearing.

(4) The individual may appeal from the decision of the county board to the State Board.

(Emphasis added).

§ 4–205. Powers and Duties of county superintendent.

* * *

(c) *Interpretation of law; controversies and disputes.*—
(1) Subject to the authority of the State Board under § 2–205(e) of this article, each county superintendent shall explain the true intent and meaning of:

(i) The school law; and

(ii) The applicable bylaws of the State Board.

(2) Subject to the provisions of § 6–203 and Title 6, Subtitle 4 of this article and without charge to the parties concerned, **each county superintendent shall decide all controversies and disputes that involve:**

(i) The rules and regulations of the county board; and

(ii) **The proper administration of the county public school system.**

(3) A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board.

(Emphasis added).

Appellant contends that the local board, not the superintendent, had the authority to dismiss appellant, because appellant's status was that of "professional personnel" under Ed. § 6–202. According to appellant, by upholding his termination by Superintendent O'Rourke, the local board ceded its "right[ ] of dismissal and of ultimate fact finder of grounds for dismissal" to the local superintendent absent any legal authority for such delegation.[5] By doing so, appellant argues that the local board and the State Board erred in permitting

---

5. Appellant contrasts Ed. § 6–202 with Subtitle 4 of the Education Article, stating that Subtitle 4 delegates certain administrative powers to the local superintendent, generally for the purpose of administering the local school system.

Superintendent O'Rourke to "make the ultimate findings of fact" regarding appellant's termination.[6]

In the alternative, appellant argues that, even if the State Board or local board "has inherent authority to delegate dismissal authority and [the] role of the ultimate fact finder," such delegation of authority must be made through the rule-making process, "not via *ad hoc* quasi-judicial opinions."

Appellees respond that the hearing examiner, the local board, and the State Board each correctly determined that appellant was not a "professional assistant" within the meaning of Ed. § 6–201(e), and thus was not entitled to the procedural protections provided by Ed. § 6–202 for the suspension or dismissal of teachers, principals, and other professional personnel. Appellees maintain that appellant is not a professional assistant, because he lacked any certification from the Maryland State Superintendent of Schools. Appellees also assert that the State Board's interpretation of Ed. § 6–202 was in accordance with its recent decisions in *Walsh v. Board of Education,* MSBE Opinion No. 00–54 (2000), and *Wilkins v. Board of Education,* MSBE Opinion No. 06–10 (2006). In both *Walsh* and *Wilkins,* according to appellees, the State Board interpreted Ed. §§ 6–201, 6–202, and 4–205(c) to require professional noncertificated employees to contest their termination under section 4–205(c) rather than section 6–202.

The Court of Appeals in *Baltimore City Board of School Commissioners v. City Neighbors Charter School,* 400 Md. 324, 342, 929 A.2d 113 (2007), recently discussed the appropriate judicial review of a State Board decision. The Court first observed the State Board's "very broad statutory authority over the administration of the public school system" in Maryland. *Id.* (internal quotation omitted). The Court explained that

---

**6.** As a consequence of the local board's improper use of Superintendent O'Rourke as a fact finder, appellant argues that the local board incorrectly applied a "highly deferential" standard of review of the superintendent's findings rather than the proper *de novo* standard.

the totality of its statutory authority constitutes a visitatorial power of such comprehensive character as to invest the State Board with the last word on any matter concerning educational policy or the administration of the system of public education....

*Id.* at 342–43, 929 A.2d 113 (internal quotations omitted).

The Court acknowledged that the State Board's "visitatorial power is not unlimited" in that reviewing courts ultimately decide pure questions of law. *Id.* at 343, 929 A.2d 113. Courts, however, must, by "broad statutory mandate," give "special deference" to the State Board's "interpretation of statutes that it administers." *Id.* The Court elaborated:

[W]hile administrative agencies generally may interpret statutes, as well as rule upon other legal issues, and while an agency's interpretation of a statute which it administers is entitled to weight, the paramount role of the [State Board] in interpreting the public education law sets it apart from most administrative agencies. **What that statement means is that [State Board] rulings must be given heightened, not less, deference.**

*Id.* (emphasis added) (citations omitted).

Where the statute at issue is ambiguous,

[s]o long as the [State Board] interpretation is not patently wrong, we would ordinarily defer to it. To the extent that we desire to look further, we would apply the most relevant rules of statutory construction to determine the legislative intent, and, in that regard, may consider legislative history and the statutory purpose.

*Id.* at 348, 929 A.2d 113 (citation omitted).

In the case *sub judice,* our task is to review the propriety of the State Board's decision to treat appellant's appeal of his termination as governed by Ed. § 4–205(c) rather than Ed. § 6–202. We look first to the plain text of both statutory provisions.

 Section 4–205 sets forth the powers and duties of a county superintendent. In particular, section 4–205(c) "broad-

ly covers county superintendents' decisions on '*all* controversies and disputes' involving rules and regulations of the county school board, the school law and bylaws of the State Board of Education, and the 'proper administration of the county public school system[.]'" *Reichardt v. Flynn,* 374 Md. 361, 374, 823 A.2d 566 (2003) (quoting Ed. § 4–205(c)) (emphasis in original). Proper administration of the school system includes disciplinary action against an employee. *See id.* (stating that "[i]t is difficult to imagine any disciplinary action against a teacher or coach, taken by a county superintendent, that would fall outside of the broad scope of the statute"). An employee who is dissatisfied with the superintendent's decision may appeal to the county board and, thereafter, to the State Board. Ed. § 4–205(c)(3).

■ Section 6–202(a), however, sets forth a different process for suspending or dismissing "a teacher, principal, supervisor, assistant superintendent, or *other professional assistant.*" (Emphasis added). Under Ed. § 6–202(a), the county board, not the county superintendent, makes the ultimate decision on suspension or dismissal. *See also Arroyo v. Bd. of Educ.,* 381 Md. 646, 655 n. 9, 851 A.2d 576 (2004). " '[I]n reality the [local] board acts in the manner of an impartial tribunal judging the charges made by one of its employees (the superintendent) against another of its employees ( [e.g.] the teacher) and the latter's defense to those charges.'" *Id.* (quoting *Bd. of Educ. v. Barbano,* 45 Md.App. 27, 29, 411 A.2d 124 (1980)). Moreover, prior to removal, the subject individual is entitled to a hearing before the county board and, at that hearing, he or she may be represented by counsel and bring witnesses. Ed. § 6–202(a)(2)–(3).

The term "professional assistant" is not defined in the Education Article. Ed. § 6–201(b), however, requires that a "professional assistant" be appointed by the county board, upon nomination by the county superintendent. To be appointed as a "professional assistant," an individual must hold "the appropriate certificate from the State Superintendent

issued in accordance with the rules and regulations of the State Board." Ed. § 6–201(e).

We turn next to the State Board's interpretation of Ed. §§ 4–205(c) and 6–202 in its opinions. In *Livers v. Board of Education,* 6 Op. MSBE 407 (1992), the State Board decided that the review of a local superintendent's termination of a noncertificated technical support employee was to be conducted in accordance with the provisions of Ed. § 4–205(c)(4), which was the previous version of the current Ed. § 4–205(c)(3). *Id.* at 409, 411 A.2d 124, *aff'd* 101 Md.App. 160, 643 A.2d 523, *cert. denied,* 336 Md. 594, 650 A.2d 239 (1994). In *Walsh* and *Wilkins,* the State Board extended its decision in *Livers* to the termination of *professional noncertificated* employees.

The appellant in *Walsh* was the Chief Information Technology Officer ("CITO") for the Montgomery County Public Schools, a position that was at the same level as an associate superintendent. *Walsh,* MSBE Opinion at 1. The appellant "served on a number of high level teams and committees with . . . associate superintendents" and earned a salary equivalent to that of an associate superintendent. *Id.* The appellant, however, was "not a certificated employee." *Id.*

As CITO, the appellant was responsible for the implementation and operation of a new Student Information System ("SIS"), a computer database of information on student enrollment, grades, course schedules, and attendance. *Id.* When school opened for the 1999–2000 school year, the SIS "crashed," leaving registrars unable to access student course schedules and enroll students, teachers unable to take attendance, and hundreds of students sitting in cafeterias around the county because their class schedules could not be retrieved from the system. *Id.* at 2. Because of these events, as well as a lack of contingency plans, the local superintendent decided to terminate the appellant. *Id.* at 3. The appellant appealed the county superintendent's decision to the county board of education, which referred the case to a hearing examiner for a determination of whether Ed. § 6–202 or Ed. § 4–205 applied

in the case and whether the appellant's termination was appropriate. *Id.* The hearing examiner first issued an interim decision, holding that Ed. § 4–205 was the governing provision for appellant's termination; thereafter, the hearing examiner conducted a hearing on the merits and issued a decision recommending that the county board uphold the appellant's termination from employment. *Id.* at 3. The county board considered the hearing examiner's findings and recommendation and heard oral argument from the parties, but could not reach a decision by a majority vote of its members to affirm or reverse the decision of the superintendent. *Id.* at 3–4. Thus the superintendent's decision to terminate the appellant's employment remained unchanged. *Id.*

On appeal to the State Board, the appellant argued that, although he was not certificated, his termination was governed by "the procedures set forth in [Ed.] § 6–202" because he was "the equivalent of a professional assistant." *Id.* Citing Ed. § 6–201(e), the State Board noted: "As demonstrated by the record in this case, [the][a]ppellant did not hold any certifications nor was he eligible for certification. Moreover, the job description for the CITO position specifically stated that no certificate or license was required for the position." *Id.* Based on those facts, the State Board found that the appellant "was not a professional assistant as contemplated by § 6–202." *Id.* The State Board concluded that appellant's termination was governed by Ed. § 4–205, concurring with the analysis of the hearing examiner, who stated:

> The Appellant argues that all employees of the [Board of Education] must be either (1) professional personnel, or (2) clerical and nonprofessional personnel (§ 6–201(b) and (c)), and he clearly does not fall into the second category. However, both parties admit that this law was written years ago, when hiring practices were different and boards of education routinely appointed only certificated teachers to higher level positions.
>
> Times and practices may have changed, but a rational interpretation of the law does not limit classes of employees

to those two categories alone. The law is simply silent about other possible classes of employees.

But, the law is clear that the appellate procedures of Section 6–202 apply *only* to the category of employees identified therein as 'professional personnel.' The law is equally clear that an individual must be certificated to be included in this category.

The Appellant was not certificated. Therefore, the Superintendent had the authority to dismiss [the] Appellant directly.

The Appellant is not left without recourse. Although he may not appeal his termination under the provisions of Section 6–202, he is entitled to appeal his termination under the provisions of Section 4–205 of the Education Article.

*Id.* at 4–5 (underline in original).

In *Wilkins,* the appellant was the Chief Financial Officer for the Prince George's County Public Schools. *Wilkins,* MSBE Opinion at 1. The position did not require certification, nor did the appellant hold any such certification. *Id.* at 1. The appellant was terminated by the Interim Chief Executive Officer, not by the local board, for serious and recurring inefficiencies in the division headed by the appellant. *Id.* at 2. The appellant then wrote to the local board complaining that she was denied due process and that she was due a contract, but ultimately she requested only a reconsideration of the terms of her severance upon discharge. *Id.* at 4. In line with *Walsh,* the State Board noted that the appellant, a noncertificated employee, was entitled to an administrative appeal of her termination pursuant to Ed. § 4–205(c)(3). *Id.* at 3. The State Board, however, dismissed the appellant's appeal because she did not properly file an appeal to the local board requesting a review of the termination decision. *Id.* at 4.

The State Board's interpretation of Ed. § § 4–205 and 6–202 in the case *sub judice* was consistent with its interpretation of these provisions in *Walsh* and *Wilkins,* namely, that professional noncertificated employees must contest their termination under Ed. § 4–205 rather than Ed. § 6–202. Here,

the State Board observed that the provisions of Ed. § 6–202(a) applied to the suspension or dismissal of "a teacher, principal, supervisor, assistant superintendent, or other professional assistant," and that Ed. § 6–201(e) required a " 'professional assistant' to hold 'an appropriate certificate from the State Superintendent issued in accordance with the rules and regulations of the State Board.' " not require certification and appellant did not hold a Maryland certification. The State Board rejected appellant's claim that he was a "professional assistant" because of his certifications in New York and Virginia. Those certifications, the State Board explained, may have made appellant eligible for Maryland certification, but in order to obtain a Maryland certificate, an application had to be filed with the Maryland State Department of Education with the requisite information, and appellant had never done so. The State Board concluded that appellant was not a professional assistant for the purposes of Ed. § 6–202, and thus appellant's termination was governed by Ed. § 4–205.

We are required, "under our long-established jurisprudence, ... to give substantial deference to the [State Board] interpretation" of statutes that it administers, "especially as that interpretation, though ultimately a legal conclusion, is laced with substantial educational policy." *Balt. City Bd. of Sch. Comm'rs*, 400 Md. at 344, 929 A.2d 113. In *Livers*, this Court addressed the question: "Was the [State Board's] ruling correct that grievance arbitration [by a non-certificated employee] over discipline or dismissal is an illegal subject of bargaining ... ?" 101 Md.App. at 162, 643 A.2d 523. In holding that this matter was not subject to arbitration, we upheld the State Board's determination that "the remedies or means by which a non-certificated employee may challenge a *discipline or discharge decision are non-negotiable matters of educational policy* within the exclusive province of the local school system." *Id.* at 166, 169, 643 A.2d 523 (emphasis added).

We recognize that appellant earned a doctorate degree in Educational Administration and Policy Studies, served

as a certified public schools employee in two other states, and possessed, according to Superintendent O'Rourke, "exactly what the job description and the posting of the [CBO] job called for." We further acknowledge that, as CBO, appellant reported directly to the Deputy Superintendent and earned an initial salary of $125,000. The applicability of Ed. § 6–202(a) is limited to specific categories of employees, to wit, "a teacher, principal, supervisor, assistant superintendent, or other professional assistant." Clearly, appellant's position as CBO could fit only within the category of "professional assistant." Appellant's missing element, however, is the requirement, imposed by Ed. § 6–201(e), that a "professional assistant" hold a Maryland certification. The position of CBO did not require a Maryland certificate; appellant did not hold any such certification; and appellant never submitted a request for any such certification to either the State Superintendent of Schools or the Maryland State Board of Education. Therefore, as a noncertificated professional, appellant could not be a "professional assistant" as that term is defined in Ed. § 6–201(e) and thus was not entitled to contest his termination under the provisions of Ed. § 6–202. Therefore, we adopt the State Board's interpretation of its statutes that a noncertificated professional employee is not entitled to the procedural protections of Ed. § 6–202, and may challenge a decision to discipline or discharge only under the provisions of Ed. § 4–205(c).

Appellant, nevertheless, claims that under Ed. § 6–201(a) the local board is authorized to "employ personnel," and that under the language of the title to Ed. § 6–202 the local board is authorized to suspend or dismiss "teachers, principals and *other professional personnel.*" (Emphasis added). Because these provisions grant the local board the power to appoint and to dismiss, appellant argues that the authority to dismiss "professional employees," like appellant, lies only with the local board under Ed. § 6–202, not the Superintendent. According to appellant, for "professional employees, the role of the Superintendent is only to nominate such individuals to the local board for appointment and to recommend to the local board their dismissal." We disagree.

██ In essence, appellant's argument reads out the requirement of certification from Ed. § 6–201(e). That provision requires a "professional assistant" to hold "the appropriate certificate from the State Superintendent issued in accordance with the rules and regulations of the State Board." Ed. § 6–201(e). We refuse to read the certification requirement as meaningless or mere surplusage. The Court of Appeals has observed:

> In construing statutes, we presume that the [legislature] acted with full knowledge of prior legislation and intended statutes affecting the same subject matter "to blend into a consistent and harmonious body of law." Therefore, we read together statutes on the same subject and harmonize them to the extent possible, so as to avoid rendering either statute "or any portion, meaningless, surplusage, superfluous or nugatory."

*Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316–17, 896 A.2d 1036 (2006) (citations omitted). Reading Title 6 of the Education Article as "a consistent and harmonious body of law," we conclude that, notwithstanding the local board's authority to appoint and dismiss personnel, the procedure protections provided by Ed. § 6–202 are limited to the suspension or dismissal of a "teacher, principal, supervisor, assistant superintendent, or other professional assistant."

██ In continuation of his argument that only the local board, and not the Superintendent, had the authority to terminate appellant's employment, appellant argues that the Superintendent's dismissal action was *ultra vires.* Consistent with our discussion *supra,* noncertificated public school employees can be fired by the Superintendent pursuant to Ed. § 4–205(c). As provided in Ed. § 4–205(c), the authority to fire lies within the Superintendent's broad authority over *"all* controversies and disputes that involve: ... (ii) The proper administration of the county public school system." Ed. § 4–205(c)(2) (emphasis added); *see Reichardt,* 374 Md. at 374, 823 A.2d 566 (stating that "[it] is difficult to imagine any disciplinary action against a teacher or coach, taken by a county

superintendent, that would fall outside of the broad scope of the statute.").

The fact that the local board hired appellant does not remove the statutory authority of the Superintendent to dismiss appellant. An application of appellant's interpretation would result again in a rewriting of Ed. § ·6–202 to cover all employees, those certificated as well as those noncertificated. Such an interpretation is not justified in light of the express language of Ed. § 6–202(a) that limits the scope of the procedural protection of Ed. § 6–202 to specific categories of public school employees.

In light of the foregoing discussion, we also find unpersuasive appellant's argument that the State Board's decision improperly delegated the termination of noncertificated employees from the local board to the local superintendent via adjudication instead of a rulemaking.

"Rulemaking is the process by which an administrative agency lays down new prescriptions to govern the future conduct of those subject to its authority; adjudication is the process by which the agency applies either law or policy, or both, to the facts of a particular case. Rulemaking is essentially legislative in nature, not only because it operates in the future, but also because it is concerned largely with considerations of policy. Adjudication, conversely, is concerned with the determination of past and present rights and liabilities. Typically, it involves a determination as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action."

*State v. Cottman Transmissions Sys., Inc.,* 86 Md.App. 714, 741, 587 A.2d 1190 (quoting *Shoreline Transp. v. Robert's Tours & Transp.,* 70 Haw. 585, 779 P.2d 868, 872 (1989)), *cert. denied,* 324 Md. 121,596 A.2d 627 (1991). "[W]hen a policy of general application, embodied in or represented by a rule, is changed to a different policy of general application, the change must be accomplished by rulemaking." *CBS Inc. v. Comptroller of the Treasury,* 319 Md. 687, 696, 575 A.2d 324 (1990).

The State Board's decision applied Titles 4 and 6 of the Education Article to the specific facts of appellant's termination of employment. Its decision did not concern a new or general policy; instead, the State Board's opinion determined whether the dismissal procedures were appropriate based on the facts of the instant case. The State Board did not delegate to Superintendent O'Rourke those powers vested in the local board because the Education Article does not invest the local board with the authority to dismiss noncertificated employees in the first place. Such dismissal authority, as interpreted by the State Board, lies solely with the local superintendent.

Moreover, the Court of Appeals dismissed a similar argument in *Baltimore City Board of Commissioners*. In that case, the appellants, a city board of school commissioners and a local board of education, sought review of three declaratory rulings of the State Board that established standards for determining the amount of funding that three charter schools were entitled to receive from their local boards of education. *Balt. City Bd. of Comm'rs*, 400 Md. at 328, 929 A.2d 113. In its rulings, the State Board stated that its opinions should provide "guidance and direction" to other charter school applicants and local school systems. *Id.* at 344, 929 A.2d 113. Appellants argued that the State Board's rulings were void because they constituted a "regulation" under Maryland Code, § 10–101(g) of the State Government Article that the Board adopted without conforming to the rule-making requirements of the Administrative Procedure Act. *Id.* The Court of Appeals disagreed:

> We have recognized that administrative agencies have discretion to establish policy either through the adoption of regulations or through *ad hoc* contested case adjudications and that it would [be] "patently unreasonable" to conclude that "every time an agency explains the standards through which it applies a statute in a contested proceeding it is promulgating rules." Declaratory rulings are thus a permissible mechanism by which [the State Board] may exercise its statutory authority to "explain the true intent and

meaning" of the public school laws and decide "controversies and disputes" under those laws.

Id. at 345–46, 929 A.2d 113 (citations omitted). Here, the State Board was similarly permitted to issue an opinion explaining the appellate procedures available to noncertificated professional employees under state education laws without violating the Administrative Procedure Act.

In sum, based on our review of Ed. § § 6–201, 6–202, & 4–205(c) and consistent with the State Board's interpretation of these provisions in *Walsh* and *Wilkins*, we conclude that a noncertificated professional employee is entitled to an administrative appeal pursuant only to Ed. § 4–205(c), because such employee is not a "professional assistant" within the meaning of Ed. § 6–201(e), and thus is not entitled to the appeal procedures provided by Ed. § 6–202. Therefore, because appellant was a noncertificated professional employee, the State Board properly determined that appellant's appeal of his termination was governed by Ed. § 4–205(c), rather than Ed. § 6–202.

## C.

### Hearing

At the start of the hearing on February 10, 2004, before the local board's appointed hearing examiner, appellant waived his right to a closed hearing, and requested that the hearing examiner hold an open hearing pursuant to the provisions of the "Open Meetings Act." [7] In response, Superintendent O'Rourke argued, in pertinent part, that the hearing before the hearing examiner was a "closed personnel matter." The hearing examiner denied appellant's request to open the hearing to the public.[8] As noted above, six days of testimony

---

7. Maryland's Open Meetings Act is codified at Maryland Code (1984, 2004 Repl.Vol., Supp.2008), § 10–501 *et seq.* of the State Government Article.

8. Appellant also requested to tape record the meeting for his own purposes, arguing that he was unemployed and unable to pay for a copy

and evidence were taken. Appellant challenged on appeal the hearing examiner's ruling to keep the hearing closed, and the State Board, upon review of the hearing transcripts, affirmed the hearing examiner. Quoting the local board's response, the State Board stated:

Local boards of education have no subpoena power; they rely on witnesses' voluntary agreement to testify at these proceedings. **Information provided by them at hearings can, and frequently do, reveal private matters and sometimes in an attempt to undermine the testimony of particularly damaging witnesses, the reputation of individuals is questioned or impugned. There are instances of both in the record compiled in this case. For example, one witness was asked if he was currently on any medication and whether this medication was a psychoactive medication.** There is no reason that such information should be made public or subject to public comment during oral argument ... **One witness was accused in pleadings of "demonstrated behavior" that, in the author's opinion, constituted "misconduct, insubordination, and willful neglect of duty."** Witnesses are accused during the proceedings of slanting information, distorting relationships, and mis-characterizing documents. Credibility is often an issue in quasi-judicial proceedings and this kind of issue, by definition, is related to the reputation of individuals.

(Emphasis added) (alteration in original).

Before this Court, appellant maintains that the State Board's decision was error. Although appellant acknowledges that he has no statutory right to an open hearing,[9] appellant maintains that, because the proceedings before the local board

---

of the hearing transcript from the court reporter. The hearing examiner denied appellant's request. Appellant has not raised the issue of tape recording the hearing before this Court.

9. Appellant concedes that "the hearing before the [local] board's appointed hearing officer was a quasi-judicial proceeding as defined in [Section 10–502 of the Open Meetings Act,] and thus, specifically exempted ... from the scope of the [Open Meetings Act]."

were quasi-judicial, "he had a common law right to an open judicial proceeding." Directing our attention to three criminal cases, *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), *Tharp v. State*, 362 Md. 77, 763 A.2d 151 (2000), and *Dutton v. State*, 123 Md. 373, 91 A. 417 (1914), appellant contends that it is well established under Maryland law that, once a subject of a quasi-judicial administrative proceeding waives any rights to confidentiality and asserts his common law right to an open hearing, the local board must grant that request as a matter of law. We disagree.

First, as appellees note, appellant can point to no case law that articulates a common law right to an open *administrative* hearing. The cases appellant cites are criminal cases, which address concerns specific to a criminal defendant's constitutional right to a public trial, and have no applicability in an administrative proceeding. *See In re Oliver*, 333 U.S. at 267–68, 68 S.Ct. 499, 92 L.Ed. 682 ("Today almost without exception every state by constitution statute, or judicial decision, requires that all criminal trials be open to the public." (footnotes omitted)); *Tharp*, 362 Md. at 93, 763 A.2d 151 ("The openness of criminal trials to the public is a strong tradition in American jurisprudence and can be traced back to English common law and to Maryland's subsequent adoption of the common law of England, preserved for our citizens by Article 5 of the Maryland Declaration of Rights."); *Dutton*, 123 Md. at 387–89, 91 A. 417 (discussing the significance of the Sixth Amendment right to a public trial in a criminal proceeding).

Appellees also draw our attention to a formal opinion issued by the Attorney General of Maryland, which has addressed the question of what a board should do "if the employee whose status is contested, and whose personnel records are involved, waives confidentiality and requests that the hearing be open to the public?" Open Meetings Act, 90 Md. Op. Att'y. Gen. 17, 22 (2005). In that opinion, the Attorney General noted that, although Maryland case law does not articulate a specific common law right to an open hearing in an administrative hearing,

if the employee waives confidentiality and requests an open hearing, the County Board should consider whether any other interests would justify a closed hearing. If it identifies such an interest relating to its own processes or other individuals (for example, protecting the privacy of employees not party to the proceeding), whether or not included among the exceptions in [Maryland Code,] § 10–508 [of the State Government Article], it may close the hearing. If it can identify none, it should open the hearing, to avoid a later claim of error (or even of a due process violation) based on an arbitrary and unreasonable response.

*Id.* at 22–23.

Upon review of the State Board's decision, we conclude that the hearing examiner correctly followed the procedure outlined by the Attorney General in his opinion. Specifically, as noted above, the State Board stated that the hearing examiner closed the hearing because of concern for both the reputation and the privacy of witnesses who voluntarily chose to testify at the proceeding. The State Board observed that the witnesses were questioned about especially delicate matters such as whether they were on "psychoactive medication," and emphasized that "[t]here [was] no reason that such information should be made public or subject to comment during oral argument." Finally, the State Board concluded that, "[b]ased on the identified interests, we find that the local board has demonstrated a reasonable and rational basis for keeping the proceedings before the local hearing officer and oral argument before the local board closed in this matter."

Given the prerogative of local boards to "protect[ ] the privacy of employees" and other witnesses "not party to the proceeding" at a local hearing, *id.* at 22, we conclude that the State Board did not err in determining that appellant was not entitled to an open hearing before the local hearing examiner.

## D.

### Discovery & Declaratory Relief

Appellant argues that he was entitled to conduct discovery in his lawsuit before the circuit court and claims that

the circuit court erred in striking the scheduling order and denying discovery. We disagree.

Matters of discovery in a civil action are governed by Maryland Rule 2–401. The circuit court has "broad discretion" in matters of discovery. *E.g., Kilsheimer v. Dewberry & Davis,* 106 Md.App. 600, 615, 665 A.2d 723 (1995) ("The circuit court has broad discretion with respect to the resolution of discovery disputes."), *cert. denied,* 341 Md. 406, 671 A.2d 20 (1996); *Poole & Kent Co. v. Equilease Assocs. I,* 71 Md.App. 9, 19, 523 A.2d 1018 (1987) (stating that a circuit court's "denial of an oral request for a delay in ruling on [the] appellees' motions in order to extend the time for discovery" was "entirely within the court's discretion"). Accordingly, we review a circuit court's determinations relating to discovery matters under an abuse of discretion standard. *Poole & Kent Co.,* 71 Md.App. at 19, 523 A.2d 1018.

Discovery in circuit court "should not be permitted when a remand to the administrative agency is a viable alternative." *Montgomery County v. Stevens,* 337 Md. 471, 481–82, 654 A.2d 877 (1995). This general rule is consistent with the "very narrow" scope of judicial review of administrative appeals. *Id.* at 482, 654 A.2d 877. The reviewing court's "role is limited to determining if there is substantial evidence in the administrative record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Id.* (internal quotations omitted). The reviewing court "ordinarily does not render a new judicial decision grounded on the testimony or evidence introduced for the first time before the court." *Id.* (internal quotation omitted). In other words:

> The presentation of new evidence to the circuit court is inconsistent with the narrow scope of judicial review of agency decisions. Were new evidence to be allowed before the circuit court and the court permitted to take that evidence into consideration when rendering its decision, the circuit court would no longer be focusing its attention upon the proper considerations. Rather, a party would, in most

cases, be presenting this new evidence to detract from that evidence upon which the agency based its decision, and, therefore, the court would not be focusing upon whether the record itself contains substantial evidence to support the agency's decision.

*Erb v. Md. Dep't of the Env't,* 110 Md.App. 246, 267, 676 A.2d 1017 (1996). Accordingly, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■■■ Rule 2–504, which authorizes the issuance of a scheduling order, does not provide a right to discovery when the circuit court is reviewing the decision of an administrative agency. Rule 2–504 is set out in Title 2 of the Maryland Rules, entitled "Civil Procedure—Circuit Court," and within Chapter 500, "Trial." Consequently, Rule 2–504 sets forth the general rules for a scheduling order for civil actions filed in circuit court. The circuit court's review of the State Board's Opinion in this case is governed specifically by Title 7: "Appellate and Other Judicial Review in Circuit Court." Contained therein is Rule 7–208(c), which provides that "[a]dditional evidence in support of or against the agency's decision is not allowed unless permitted by law."

■■■ Appellant next contends that the circuit court erred in denying appellant declaratory relief in his Petition for Judicial Review and Declaratory Judgment, arguing that "[j]udicial review of an administrative action does not preclude the right ... to ask for a declaratory judgment." Appellees respond by noting that the circuit court did not rule that appellant had no right to seek declaratory relief. Instead, appellees argue that "the court considered, and rejected, Appellant's claims for declaratory relief which were part and parcel of the State Board's decision which the court reviewed pursuant to the Maryland Rules at 7–201 *et seq.*" We agree with appellees.

In his Petition appellant sought both judicial review and declaratory relief. In a thorough and well-reasoned opinion,

the circuit court addressed appellant's claims for declaratory relief:

### *Preliminary Questions Presented for Purpose of this Judicial Review*

A. Can [Appellant] Combine a Cause of Action for Declaratory Relief, with an Action for Judicial Review of a Decision of an Administrative Agency, i.e., School Board?

Yes and No. Yes, but only to the extent the issues of declaratory relief were initially requested, raised and pursued below at the administrative level. No, in this case to the extent the issues they were not raised initially raised below, as they cannot be raised now as new actions separate from this Courts's [sic] judicial review function herein. If those initially raised below are not presently ripe for declaratory relief, such relief will not be granted.

Given the basic premises that judicial review consist[s] of a retrospective review of the record before the agency to which the Court is bound, it involves a wholly different methodology, i.e., historical review, as contrasted to a trial as would be involved in Declaratory Relief, which is primarily prospective in nature. Thus, the two are, by their very nature, wholly different causes of action. Since the Court, in a Declaratory Relief action, is not normally bound by the administrative record below, the two actions should not normally be combined in one lawsuit as it is wholly inappropriate to combine them, given their contrasting natures. "... Judicial review of an agency decision is a review of a record, not a trial involving witnesses, ..." Rochvarg, *Maryland Administrative Law*, 2001, 81. In an administrative appeal as contrasted to a trial, initial factual resolutions are made by the agency or boards, not the reviewing court. The Court here should not clutter its primary reviewing function with the taking of new evidence, the making of new factual findings or the declaration of future rights of the Appellant or other prospective parties before administrative bodies in this or future proceedings.

*State Ret. & Pension Sys. [v]. Thompson,* 368 Md. 53, 792 A.2d 277 (2002) held that, although it is not inherently impermissible to join other claims in an action for judicial review of an administrative order, the trial court should be guided by MRP 2–503, which allows a consolidation or joint trial of claims, issues or actions when actions involve a common question of law or fact or a common subject matter. That case involved the failures of the trial court to follow dictates of the Court of Special Appeals, when the Appella[te] Court twice fashioned a remedy for the appellee, and the failure of the appellee to exhaust his administrative remedies. The Court of Appeals there held there was no attempt by the appellee to exhaust his administrative remedies.

To allow Appellant here to consolidate an action for new Declaratory Relief would be to consider the latter before Appellant exhausted his administrative remedies. If the Court ruled in Appellant's favor on the administrative agency appeal here it would have likely to remand back to the agency(s), i.e., the State or local boards, for appropriate relief.

Next, in his Petition for Judicial Review and Declaratory Judgment filed in this Court, [appellant] asked this Court to declare entitlement to the following:

In Count II that Maryland educational "professional assistants" non-certified in Maryland but certified out of state, who are parties to *Interstate Agreement [o]n Qualifications of Educational Personnel* are specifically entitled to the dismissal or termination procedures of the Educational Article ([Ed.]), § 6–202, MD.Code and that such terminations by the Superintendent is *ultra vires.* In Count III that Mark Blom's serving in two positions, as General Counsel to the school system, the HCPSS and/or counsel to the Howard County Board of Education and to Chief of Staff to the HCPSS Superintendent O'Rourke, involved a conflict of interest that is not allowed under the Educational Article or the Maryland Rule of Professional Conduct. In Count IV, that the

Howard County Board of Education can legally reimburse the legal expenses and fees incurred by [appellant] as a result of his termination. In Count V that personnel hired by the local boards of education are generally entitled to open hearings in disciplinary and termination employment matters. In Count VI that parties to local board of education appeals hearings are entitled to a copy of the transcript upon payment of the actual expense.

While this Court has ruled in open court and affirms herein that it will not entertain any new Declaratory Judgment relief in the instant case, this Court in its judicial review function to the extent it was requested below, will rule on some of the declaratory relief requested in those Counts. The Court notes that Appellant, apparently in accordance with the Administrative Procedures Act, SG § 10–304, first asked for some declaratory relief in his *Petition for Declaratory Ruling* directed to the State Board on October 3, 2003.

This Court notes, regarding Count II, in fulfilling its judicial review function, as a threshold matter that a decision to terminate the employment of Appellant would not involve *ultra vires* actions on the part of HCPSS but would be a matter of an unauthorized internal component or entity of HCPSS, the Superintendent, wrongly exercising power given to another such component or internal entity, the Board itself. It would not involve the resolution of whether HCPSS as an entire body or entity exceeded its authorized powers. It would be a matter as to whether or not HCPSS, as a whole, was following its own procedures set out in ED, *Subtitle 2.,* § 6–201 *et seq.*

Thus, the Court, regarding Count II, in its judicial review functions finds that the proper legal underpinning to ask for Declaratory Relief at the administrative levels, State or local boards, for alleged *ultra vires* actions on the part of HCPSS, as requested by Appellant did not exist. The Court makes this ruling as a supplement to its holding in open court not to clutter its primary reviewing function with taking new evidence, making new factual findings or declar-

ing Appellant or other prospective parties have certain rights in Board of Education administrative proceedings in the future.

As to the legal issue raised in Count VI, Appellant requested for reimbursement for his legal expenses and fees, as a result of his termination. However, in the proceedings before the hearing officer appointed by the Local Board, and thereafter before both Boards of Education there was never follow-through by way of oral argument or testimony for the same. Thus, Appellant is found not to have actively pursued his request for such declaratory relief at any of the administrative agency levels below. Since he did not pursue it by way of oral argument or testimony and the local or State Board did not rule on it, he is deemed to have waived any rights for any such reimbursement. Thus, the Court on its own independent review finds the record below does not support a right on Appellant's part to have this claim for reimbursement for legal fees awarded. Since the record below is insufficient and the Court here is only performing a judicial review of [a] historical record, the granting of Declaratory Relief requested in Count IV is found to be improper on that score alone.

Even assuming, *arguendo*, the record did support pursuits of such a claim factually, he is not entitled to it legally. By no stretch of logic or legal interpretation, is Appellant here entitled to reimbursement for his private legal fees pursuant to [Ed.] [§ 4–104] as an agent of the school board where he is the one bringing the action against the Board!?

Also the same logic the Court employed on the request for new Declaratory Relief at the hearing in open court and herein applies for himself or other potential parties, to his right to have declaratory relief granted at the administrative Board of Education levels, particularly regarding Counts II, V, and VI. Again, wholly different nature and methodologies are involved: historical review of an individual employment termination by HCPSS Superintendent as contrasted to Declaratory Relief for prospective pronouncements about the rights of a whole category of "professional

assistants" to open hearings or to transcripts in future cases, wherein the differing factual considerations may result in wholly different conclusions.

Again, since the Court ordinarily, in a new Declaratory Relief action, is not bound by the administrative record below, the two actions should not be combined in one lawsuit as it is wholly inappropriate to combine them, given their contrasting natures. However, to that extent review of requests for Declaratory Relief may be involved in its judicial review role of the historic record below, it will, in effect, rule on some of those issues, Counts II, III, IV, V & VI but will ... grant no declaratory relief on them.

In a supplemental memorandum, the circuit court considered Count VIII of appellant's petition:

In [appellant's] Amendment by Interlineation to add a new Count VIII pursuant to Maryland Rule 2–341, he attempts to have this Court consider a new cause of action pursuant [to] the Maryland Public Information Act (PIA), SG § § 10–611 *et seq.* in the instant case primarily involving judicial review of administrative actions of the School Boards. As noted by the Court for the reasons stated in its Memorandum filed herewith and in accordance with the Maryland Rules of Procedure cited below, he is certainly not entitled to have such a new cause of action included in this judicial review case.

Technically such an amendment brings in a new cause of action too late in the process, which is definitely not part of the judicial review of the agency's decision below. Thus, it is totally inappropriate for it to be added to or considered with this Petition for Judicial Review.... Also the [c]ourt so held at the hearing on Judicial Review on March 16, 2006 and in Sections Preliminary Questions A & B of its Memorandum, particularly at pages 4–13, indicating all the reasons why [appellant] is not entitled to have new Declaratory Relief entertained herein on issues not raised appropriately below. Accordingly he is not entitled procedurally to interlineated by amendment adding a brand new prospective cause of action pursuant [to] the Maryland Public Informa-

tion Act, SG § § 10–611 *et seq.* under his erroneous theory that Maryland Rules, Title 2, and not 7, are applicable to this case.

We agree with the circuit court's opinion and hold that the circuit court did not err in denying declaratory relief to appellant.

## E.

### Mandatory Reporting of this Court's Opinion

■ Appellant's last contention is that this Court must designate the opinion in this case for reporting "because an unreported opinion would violate the separation of powers," specifically Article 8 of the Maryland Declaration of Rights in the Maryland Constitution.[10] In so arguing, appellant cites to no Maryland case, nor have we found one. Instead, appellant cites to *Anastasoff v. United States,* 223 F.3d 898 (8th Cir. 2000), for the proposition that unreported opinions unconstitutionally expand the judicial power beyond the limits of Article III of the U.S. Constitution. *Anastasoff* is inapposite for the simple reason that Article III of the U.S. Constitution is not applicable to the States through the Fourteenth Amendment. *See* 16A Am.Jur.2d *Constitutional Law* § 405 (1998) (stating that only certain provisions of the first 10 amendments, not the Constitution itself, were made applicable to the states through the Fourteenth Amendment).

■ The reporting of this Court's opinion is governed by Section 16, Article IV of the Constitution of Maryland and Maryland Rule 8–605.1(a). Section 16, entitled "Reports," states:

Provision shall be made by Law for publishing Reports of all causes, argued and determined in the Court of Appeals

---

**10.** Md. Constitution, Declaration of Rights, Article 8, entitled "Separation of Powers," provides:

That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

and in the intermediate courts of appeal, which the judges thereof, respectively, shall designate as proper for publication.

Rule 8–605.1(a) provides that the "Court of Special Appeals shall designate for reporting only those opinions that are of substantial interest as precedents." It is clear that the judges of this Court have the discretion to determine which opinions are "of substantial interest as precedents" and thus are "proper for publication."

Appellant asserts that he "has standing to seek a reported opinion." We agree that implicit in Rule 8–605.1(a) is a party's "standing" to seek a reported opinion. Indeed, on occasion the reporting of our opinion in a case has been the result of a request by a party to the appeal after the opinion was filed unreported. Nevertheless, it is entirely within our discretion to determine whether an opinion is to be reported.[11]

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

---

11. The opinion in the instant appeal was initially filed unreported. Upon a motion to report filed by the local board pursuant to Rule 8–605.1(a), the panel reconsidered and submitted the opinion to the entire Court for its approval as a reported opinion.